# THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

## JOHN HAENNI.

*Filed at Springfield October 27, 1893.*

1. INSTRUCTION—*estoppel to urge that it is not based on any evidence.*
A party is not allowed to urge the objection that there is no evidence
in support of a proposition contained in an instruction, when he asks
for an instruction based on the same theory as to the evidence. A de-
fendant has no right to complain of error in an instruction given for
the plaintiff, where the like error appears in an instruction given at
his own request.

2. SAME—*to find from the evidence does not authorize the considera-
tion of that which is excluded.* Where a jury is required to find certain
facts from the evidence, the instruction will be understood as referring
to the evidence not ruled out by the court.

3. SAME—*making it the duty of the jury to assess plaintiff's actual
damages.* In an action in which exemplary damages are recoverable
and are sought to be recovered, it is error to instruct the jury that it is
their duty to assess the plaintiff's damages; but not so in a case where
compensatory damages, only, are recoverable.

4. SAME—*former decisions.* The doctrine in *Chicago and North-
western Ry. Co.* v. *Chisholm,* 79 Ill. 584, and *City of Peoria* v. *Simpson,*
110 id. 294, holding it error to instruct the jury that it was their duty to
assess the plaintiff's damages in case they should find the defendant
guilty, is so modified as to limit its application to cases where, under
the facts, the jury are justified in allowing exemplary damages.

5. MASTER AND SERVANT—*risks of service assumed by servant.* Where
a servant enters into a contract of hiring with the master, he assumes
all the risks ordinarily incident to the employment, and will be pre-
sumed to have contracted with reference to such risks.

6. But when a servant is ordered by the master to do work outside
of his regular employment, and which is different in character from
that embraced in his regular contract of hiring, and brings him into
association with a different class of employes, he will not, by obeying
such orders, necessarily, thereby assume the risks or hazards incident
to the new work. The hazard incident to the new work may be con-
sidered extra-hazardous, as being outside of the regular employment
and additional to the risks thereof.

7. Among the risks incident to the business which the servant is
understood to take upon himself are those arising from the careless or

wrongful acts of fellow-servants. But this is subject to the implied undertaking of the master that he will use all reasonable care to provide safe premises, machinery and appliances, and to employ competent and prudent co-employes.

8. Where the master fails to furnish suitable machinery and see that it is properly protected, or to employ careful and prudent servants to manage and operate such machinery, the risks resulting from such failure are extra-hazardous, and such extra hazards are not among the risks which the employe assumes as a part of his contract of hiring.

9. Where a servant is temporarily engaged in more hazardous work than that for which he was employed, he takes upon himself all such risks incident to the work as are equally open to observation of himself and the master.

10. It is when the servant works with defective machinery, knowing it to be defective or dangerous, that he assumes the risks incident to its use. Not only the defects, but the dangers, must be known to him.

11. SAME—*master's liability for negligence to his servant.* A master can not screen himself from liability for an injury to his servant upon the ground he did not know of the defects in his machinery, or of the incompetency of his servants through which the injury resulted, if he might have known of them by the exercise of due care. The master or his foreman will be presumed to know and be familiar with the dangers, latent and patent, ordinarily accompanying his business. The law will imply and infer notice of any defect which, by the use of ordinary care, might have been known to the master.

12. SAME—*duty of master to warn servant of dangers, etc.* If there are latent defects or hazards incident to an occupation, of which the master knows or ought to know, and which the servant, from ignorance or inexperience, is not capable of understanding and appreciating, it is the master's duty to warn or inform the servant of them.

13. SAME—*right of master to require services outside his employment.* The question whether certain special service outside of the contract can be reasonably required of the servant, depending upon the contract and the character of the service and the necessities of the master, is a question of fact, which must be left to the jury to determine.

14. SAME—*of the negligence of—question of fact.* Where a master orders his servant into a service which he did not undertake to perform, and while in such service the servant is injured, the question of negligence must depend upon the facts and circumstances of such case.

15. NEGLIGENCE—*estoppel to claim that there is no proof of.* Where a defendant submits the question of negligence to the jury by an instruction, he will be estopped, on appeal or error, from claiming that there was no proof of negligence.

146    614
99a  [16]674

146    614
101a  [8]172

146    614
102a[14]355
102a[12]435

146    614
200   [5]108
200   [9]110
200  [11]116

146    614
202  [10]339
105a  [9]599,

146    614
203   [13]79

203   [7]457
203   [7]498
203  [10]539
206  [11]152
106a  [6] 28
107a  [7]163
107a  [9]517
107a[11]589
109a[11]190

146    614
208  [11]123
208   [8]159
110a  [11]164
110a  [7]601

146    614
e209  [7]633
210   [5]237
211   [1]346
111a[12]290
112a  [12]37

146    614
c213   313
113a  [12]81
113a  [12]87

146    614
115a  [6]618

16. DAMAGES—*when exemplary may be allowed.* Exemplary damages are given as a punishment when torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.

17. SAME—*measure of, for injury through mere negligence.* Where an injury results from any act or omission of another which is free from any taint of fraud, malice or willful wrong,—that is to say, if a tort is committed through mistake, ignorance or mere negligence,—the party injured thereby is only entitled to recover compensation for the injury, which includes "loss of time during the cure, and expense incurred in respect of it, the pain and suffering undergone by the plaintiff, and any permanent injury, especially when it causes a disability for further exertion."

18. SAME—*instruction as to measure of.* In an action by a servant against his master to recover for a personal injury, as, the loss of a limb, through mere negligence, the court instructed the jury that if they found the defendant guilty it was then their *duty* to assess the plaintiff's damages at such sum as the evidence might show, if anything, which he had actually sustained as the direct or proximate result of such injury, taking into consideration his loss of time, his pain and suffering, his necessary and reasonable expenses in being cured or attempting to be cured, if such facts were shown by the evidence; and that if the jury belive, from the evidence, that the plaintiff was permanently injured and was incurable, they should take that into consideration in their assessment of the damages: *Held,* that the instruction, as far as it went, stated the elements of damages which the plaintiff was entitled to recover, and was not erroneous from the use of the words making it the duty of the jury to assess such damages.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This is an action on the case brought by appellee against the appellant company to recover damages for a personal injury. The appellant owned two mines numbered 9 and 10. Appellee was a blacksmith, employed by appellant, and worked in the blacksmith shop at mine No. 10. One Hebenstreit was superintendent of the mines; Weissenborn was "pit boss" and Balke "top boss" of mine No. 10, and Hansinger was "boss carpenter." On the morning of August 1, 1890, the appellee

went from the blacksmith shop at mine No. 10, under orders from Weissenborn, to mine No. 9, an eighth of a mile distant, to assist in raising a smoke-stack from the ground for the purpose of placing it upon a base on the roof of the boiler-house at mine No. 9. Some 25 or 30 other employes of the company were called from their various duties to aid in the same work. The stack was a smooth, round iron cylinder, 35 feet long, $2\frac{1}{2}$ feet in diameter and weighing 3800 pounds. The apparatus used for hoisting the stack consisted of a guy-pole, 8 inches square and 44 feet long, extending through the roof of the engine house near said base, with a hook at the top, to which were suspended a block and tackle, and a snatch block at the bottom. A rope was tied around the smoke-stack near the middle, and to this rope the hook of the lower block of the tackle was attached. The hoisting rope passed through the tackle blocks, thence down through the snatch-block at the bottom of the guy-pole, so that the men pulling on the hoisting rope could pull horizontally. A second rope was tied to the stack below the middle, which was used for steadying it and pulling its lower end to the proper place. The rope, connecting the upper block of the tackle with the guy-pole, was passed over the hook attached to the top of the pole; and it is claimed that the rope, being thus attached, would, if suddenly slackened, vault upward and slip off the hook. While appellee was pulling upon the steadying rope, as he had been directed to do by Hebenstreit, the stack, which had been raised into the air 15 feet, slipped about a foot through the rope around it, causing the loop of the rope to slip out of the hook; and the stack then fell upon the roof of the boiler-house and rolled upon the ground, where it struck appellee's right leg and cut it off below the knee. Hebenstreit, Weissenborn and Balke were all present, directing the men in the work. It is alleged, that the accident occurred because the ropes and blocks and tackle were arranged and connected with the

smoke-stack and the guy-pole in a negligent and insecure manner. The ropes were tied by Hansinger.

The jury returned a verdict in favor of the plaintiff, and also a special finding as follows: "Question: Of what acts of negligence was defendant or its servants guilty which caused plaintiff's injury? Answer: First, by removing plaintiff from his professional job, second, by improper arrangements for raising the smoke-stack." Judgment was rendered upon the verdict, and affirmed, on appeal, by the Appellate Court.

Mr. Charles W. Thomas, for the appellant:

The plaintiff's case is based upon the theory that he was employed as a mine blacksmith, and was ordered to perform an act not within the scope of his employment, which act was accompanied with latent dangers of which he was ignorant and of which the defendant was aware. As a matter of fact not a single element of this hypothesis exists. There is no evidence in the record that it was not the plaintiff's duty, as mine blacksmith, to assist in raising the stack. Again, there were no hidden, latent dangers about the work. Again, nobody was proved to be guilty of any negligence whatever.

The plaintiff's first instruction proceeds upon the hypothesis that there was evidence tending to show that the work plaintiff was engaged in was not within the scope of his duty.

The second instruction tells the jury that if they find the defendant guilty "it will then be their duty to assess the plaintiff's damages at such sum," etc. This was error. *Railway Co.* v. *Chisholm*, 79 Ill. 584.

Mr. George L. Zink, and Mr. James M. Truitt, for the appellee:

If the machinery of the master is dangerous and unsafe, either in the method of its construction or the materials of which it is composed, the defendant, if he knew, or might by due care have ascertained, the fact, is liable for resulting in-

juries, unless the servant, knowing the facts, has waived the risk. Wood on Master and Servant, sec. 348.

The master cannot secure himself from liability on the ground that he did not know of the defect, if by ordinary care he could have known of it. Wood on Master and Servant, sec. 347.

If he knows, or in the exercise of due care ought to have known, that his servants are incompetent or his structures or engines insufficient, either at the time of procuring them or at any subsequent time, he fails in his duty. Wood on Master and Servant, par. 687.

Again, in section 349 Mr. Wood says: "Where there are latent defects or hazards incident to an occupation, of which the master knows or ought to know, it is his duty to warn the servant of them fully, and failing to do so he is liable to him for any injury that he may sustain in consequence of such neglect."

Again, ignorance on the part of the employer will be negligence when proper inquiry would have obtained the necessary information, and where the duty to inquire is shown. *Railroad Co.* v. *Shannon*, 43 Ill. 338; 2 Thompson on Negligence, 996.

It is presumed that the master or foreman in charge is familiar with the dangers of the business, and if there are latent risks that a servant, from ignorance or inexperience, is incapable of understanding, or which he would not be likely to know, the master should inform him of such dangers. *Smith* v. *Car Works*, 60 Mich. 501; *Goff* v. *Railroad Co.* 28 Ill. App. 529.

In the *Goff case* this court says: "The law will imply and infer notice of any defect which, by the use of ordinary care, might have been known to the master."

Objection is made to plaintiff's second instruction, because it tells the jury that if they find the defendant guilty "it will then be their duty to assess plaintiff's damages," etc. *Rail-*

*way Co.* v. *Chisholm,* 79 Ill. 584, is cited in support of the objection. That was a case for exemplary damages, and is not applicable to this case. The following cases support the form and principle of appellee's instruction: *Railroad Co.* v. *Holland,* 122 Ill. 461; *Village of Sheridan* v. *Hibbard,* 19 Ill. App. 421; 119 Ill. 307; *Railroad Co.* v. *Martin,* 111 id. 219; *Packet Co.* v. *Gattman,* 127 id. 598; *Frame* v. *Badger,* 79 id. 441; *Railway Co.* v. *Snyder,* 117 id. 376; *Pennsylvania Co.* v. *Sloan,* 125 id. 72.

As to latent dangers, and the duty of the master to inform the servant of them, see Wood on Master and Servant, secs. 376, 387; Wharton on Negligence, sec. 214; 14 Am. and Eng. Ency. of Law, sec. 14, p. 857; *McDonald* v. *Railway Co.* 41 Minn. 439.

Mr. Justice Magruder delivered the opinion of the Court:

Objections are made to the two instructions given to the jury on behalf of the plaintiff. The first instruction lays down, as one of the conditions to a right of recovery, that the jury shall "believe from the greater weight of the evidence that the plaintiff was employed by the defendant as blacksmith, and that, while so employed, Weissenborn, or some other officer or agent of the defendant having authority, ordered and directed the plaintiff to assist in hoisting and putting in place a smoke-stack to the furnace connected with the coal mine operated by defendant, and * * * that hoisting and putting in place a smoke-stack was no part of the work which plaintiff had contracted to perform for the defendant." In regard to this portion of the instruction counsel for appellant says: "The instruction proceeds upon the supposition that there was evidence tending to show that the work appellee was engaged in was not within the scope of his duty; there was no such evidence." The appellant is not in a position to make the objection thus urged, inasmuch as it asked the court to give and the

court did give in its behalf an instruction of which the following is the first paragraph: "The Court instructs the jury that, in order to recover in this case the plaintiff must have proved by a preponderance of the evidence not only that it was not within the scope of his employment to be assisting at the work he was engaged in at the time of his injury, but also that some servant of defendant was guilty of some act of negligence which caused plaintiff's injury." We do not deem it necessary to enter into a discussion of the evidence, if the record were in such shape as to justify us in doing so, in order to determine whether the proof does or does not tend to show that raising the smoke-stack was not within the scope of plaintiff's duties as a blacksmith. If plaintiff's instruction is wrong in the respect indicated, the defendant's instruction is chargeable with the same fault. The latter instruction leaves it to the jury to find from the preponderance of the evidence the existence of a fact, which is now claimed to be unsupported by any testimony at all.

The defendant has no right to complain of error in an instruction given for the plaintiff, when like error appears in an instruction given at the defendant's request. (*Clemson* v. *State Bank of Illinois*, 1 Scam. 45; *Pierce* v. *Millay*, 62 Ill. 133; *Northern L. Packet Co.* v. *Binninger*, 70 id. 571; *Calumet Iron and Steel Co.* v. *Martin*, 115 id. 358; *Ochs* v. *The People*, 124 id. 399; *I. C. R. R. Co.* v. *Latimer*, 128 id. 163; *L. E. & W. R. R. Co.* v. *Middleton*, 142 id. 550). This doctrine was thus succinctly stated in *Ochs* v. *The People, supra*, in the following words: "Surely, it is not for the plaintiffs in error to complain of an instruction when they ask one of the same kind themselves." (*Chapman* v. *Barnes*, 29 App. Ct. Rep. 184).

The first instruction also predicates plaintiff's right to a recovery upon the belief by the jury "from the greater weight of the evidence," "that hoisting and putting in place a smoke-stack in the way the smoke-stack in question was being hoisted and put in place, if such is shown from the evidence, was extra-

hazardous." Counsel makes the following objection to this part of the instruction: "It supposes that there was evidence that the work was extra hazardous, when there was no evidence except the accident itself."

When a servant enters into a contract of hiring with the master, he assumes all the risks ordinarily incident to the employment, and is presumed to have contracted with reference to such risks. (Wood's Law of Master and Servant, sec. 326). But where a servant is ordered by the master to do work outside of his regular employment, and which is different in character from that embraced in his regular contract of hiring, and brings him into association with a different class of employees, he does not, by obeying such orders, necessarily thereby assume the risks or hazards incident to the new work. *(The Pitts., Cin. and St. L. Ry. Co. v. Adams*, 105 Ind. 151). The hazards incident to the new work may be considered extra-hazardous as being outside of the regular employment and additional to the risks thereof. As the instructions of both parties left it to the jury to determine whether or not the hoisting of the smoke-stack was outside of plaintiff's duties as a blacksmith, their decision of this question in the affirmative would necessarily involve a finding on their part that the hazards of the additional work were extra.

The evidence tends to show, that the tackle and ropes and blocks were so carelessly and negligently adjusted as to cause the smoke-stack to slip, and the rope to become detached from the hook at the top of the guy-pole. The slipping of the rope from the hook was due either to such careless adjustment, or to the failure to place upon the hook some protection which would keep the rope in its place. In other words, the proof tends to show, that the accident occurred, either because of the carelessness and incompetency of those who arranged the hoisting apparatus and fixed it and placed it in position, or because of defects in the apparatus itself. Among the risks incident to the business, which the servant is understood to

take upon himself by the contract of hiring, are those arising from the careless or wrongful acts of fellow servants. (Wood's Law of Mas. & Serv. sec. 427). But the assumption by the servant of risks resulting from the negligence of his fellow servants is subject to the implied undertaking of the master, that he will use all reasonable care to furnish safe premises, machinery and appliances, and to employ competent and prudent co-employees. (*P., C. and St. L. Ry. Co.* v. *Adams, supra*; Wood's Law of Mas. & Serv. secs. 329 and 416). When the master fails to furnish suitable machinery and to see that it is properly protected, or to employ careful and prudent servants to manage and operate such machinery, the risks resulting from such failure are extra-hazardous, and such extra hazards are not among the risks which the employee assumes as a part of his contract of service. (*U. S. Rolling Stock Co.* v. *Wilder,* 116 Ill. 100). Hence, we do not think that the instruction was erroneous in directing the attention of the jury to the question, whether or not the work of hoisting the smoke-stack, by means of the apparatus used for that purpose, was extra-hazardous.

The instruction further predicates the right of recovery upon the belief of the jury from the greater weight of the evidence, that plaintiff was inexperienced, and did not have the requisite skill or knowledge to perform the work of hoisting and putting in place the smoke-stack, and did not see or know the dangers and risks of the work, and, by the exercise of ordinary observation and diligence under all the facts and circumstances surrounding him at the time so far as shown by the evidence, would not have seen or known such dangers and risks; and that his want of knowledge or skill, if shown by the proof, was known to the defendant, or would have been known by the exercise of ordinary diligence; and that the defendant did not give him notice or warning of the danger of hoisting and putting in place the smoke-stack, if such danger is shown by the evidence; and that Weissenborn (the pit boss of mine No. 10)

was superior in authority to plaintiff, and it was the latter's duty to obey the orders and directions of Weissenborn if the evidence shows that such orders were given; and that it was within the scope of Weissenborn's authority to put said smoke-stack in place; and that, while plaintiff was engaged in hoisting, etc., he exercised ordinary care and caution for his own safety and was injured as alleged in the declaration; and that the injury was caused by the negligence of the defendant, etc., and was the direct result of the authority of Weissenborn over plaintiff. Counsel for appellant objects to this portion of the instruction, because, he says, it assumes that the work done by plaintiff required skill and experience, whereas the plaintiff did nothing but pull, with others, on one of the ropes, and was therefore doing what required no skill or experience; and because of the assumption alleged to be embodied in the instruction, that there was some danger, and that the defendant knew of the danger, and was under obligations to give plaintiff notice of it; and because of the alleged absence of any negligence on the part of the defendant either in the matter of hoisting the smoke-stack, or in ordering plaintiff to assist in doing so.

The testimony tends to show, that plaintiff was employed by the company to do the work of a blacksmith, and had never before helped to raise a smoke-stack either by means of the apparatus employed by the defendant when the injury occurred, or otherwise. The evidence also tends to show, that plaintiff was called suddenly from his shop to assist in hoisting the stack, and that all the arrangements for effecting such hoisting were completed when he arrived upon the ground, so that he had no opportunity to observe or inspect them.

We are not prepared to say that the raising of an immense iron smoke-stack, weighing 3800 pounds, and placing it in position upon a base prepared for it, is not an operation which requires some experience and "skill or knowledge." The instruction properly leaves it to the jury to determine from the evidence, whether or not the hoisting of the stack in the mode

adopted "required peculiar skill or knowledge to perform it with safety." While it may be true; that the mere pulling on a rope does not require any skill, yet it may require skill or knowledge to calculate and understand the effect of such exertion upon the apparatus with which the rope is connected, and upon the action of such apparatus in properly lifting the weight attached to it.

The material question, which was and should have been presented to the jury, was, whether the plaintiff, under all the circumstances, had sufficient experience or knowledge to understand the hazards of the extra work which he was required to perform. The instruction cannot be said to assume that there was danger connected with the hoisting, as it uses the qualifying words, "if any such danger is shown by the evidence." Where a servant is temporarily engaged in more hazardous work than that for which he was employed, he takes upon himself all such risks incident to the work, as are equally open to the observation of himself and the master. (2 Thompson on Neg. page 976, sec. 7). It is when the servant works with defective machinery, knowing it to be defective or dangerous, that he assumes the risks incident to its use. "Not only the defects, but the dangers must be known to him." (Wood's Law of Mas. and Serv. secs. 372, 376 ; Pierce on Railroads, pages 378, 379). As to the master's knowledge, he cannot screen himself from liability upon the ground that he did not know of the defects in his machinery, or of the incompetency of his servants, if he might have known of them by the exercise of due care. (Wood's Law of Mas. & Serv. secs. 330, 347). It has been held, that the master or foreman placed in charge of and conducting a manufacturing business will be presumed to know and be familiar with the dangers, latent and patent, ordinarily accompanying the business. *(Smith* v. *Peninsular Car Works,* 50 Mich. 501). We see no reason why the same presumption of familiarity with latent and patent dangers should not exist, where a master or super-

intendent is placed in charge of, and authorized to use, such a hoisting apparatus as is described in this record. The law will imply and infer notice of any defect which, by the use of ordinary care, might have been known to the master. (*Goff* v. *T., St. L. & K. C. R. R. Co.* 28 App. Ct. Rep. 529).

As to the master's duty to give notice, the law is that, if there are latent defects or hazards incident to an occupation, of which the master knows or ought to know, and which the servant, from ignorance or inexperience, is not capable of understanding and appreciating, it is the master's duty to warn or inform the servant of them. (*Smith* v. *Peninsular Car Works, supra;* Wood's Law of Mas. and Serv. sec. 349; *Lalor* v. *C., B. & Q. R. R. Co.* 52 Ill. 401; *Consolidated Coal Co.* v. *Wombacher,* 134 id. 57).

The question of negligence was submitted to the jury by the first instruction given for the defendant as above quoted, and, therefore, the defendant is estopped from now claiming that there was no proof of negligence. Where the master orders the servant into a service which he did not undertake to perform, and while in such service the servant is injured, the question of negligence must depend upon the facts and circumstances of each case. (14 Am. and Eng. Enc. of Law, page 861). The question whether certain special service outside of the contract can be reasonably required of the servant, depending as it does upon the contract, and the character of the service, and the necessities of the master, must be left to the jury to determine. (Wood's Law of Mas. and Serv. sec. 89). We do not think that the objections urged should be sustained.

It appears, that at the close of plaintiff's case, the court excluded from the jury certain evidence in regard to putting up the smoke-stack after the occurrence of the injury. Counsel for appellant urges, that the language of the plaintiff's first instruction was broad enough to authorize the jury to consider this excluded evidence. We do not think that the in-

structions, in requiring the jury to base their findings upon the evidence, can be construed as referring to any other evidence than that which was not excluded. If such objection in this case can be properly urged against the instructions asked by and given for one party, it can with equal propriety be made to those asked by and given for the other party. Where a jury is required to believe certain facts from the evidence, it has always been understood, that the reference is to the evidence which is not ruled out by the court, and which is therefore rightfully in the case.

The second instruction given for the plaintiff was as follows:

"2.   The Court instructs the jury, that if they shall find the defendant guilty it will then be their duty to assess the plaintiff's damages at such sum as the evidence may show, if anything, which he has actually sustained as the direct or proximate result of such injury, taking into consideration his loss of time, his pain and suffering, his necessary and reasonable expenses in being cured or attempting to be cured, if such facts are shown by the evidence; and if the jury shall believe, from the evidence, that the plaintiff is permanently injured and is incurable, they should take that into consideration in assessing the plaintiff's damages."

It is urged, as an objection to this instruction, that it asserts it to be *the duty* of the jury to assess the plaintiff's damages, etc.   In support of the objection the cases of *C. & N. W. Ry. Co.* v. *Chisholm, Jr.* 79 Ill. 584, and *City of Peoria* v. *Simpson,* 110 id. 294, are cited.   In the latter of these cases it was held that the language of the instruction complained of was such as to invite the jury "to fix the damages at the highest possible amount the evidence would justify."   We cannot see, that any such invitation is held out to the jury in the instruction above quoted.   In the former case, it was held to be proper to instruct the jury that they may, might or were at liberty to assess damages, but it was said that it would be an invasion of their rights to instruct them that it was their duty to assess

damages; and the reason given was expressed in the follow-
ing words: "It was the province of the jury to determine
whether the plaintiff had been damaged, and the amount, and
in the discharge of this duty they should have been left free
and untrammelled." We think that the second instruction
given for the plaintiff in this case, in connection with the
other instructions, fairly leaves it to the jury to say whether
or not the plaintiff was damaged and, if so, how much.

The doctrine of the *Chisholm* and *Simpson* cases, as above
stated, needs, however, to be so modified as to be limited in
its application to cases where, under the facts, the jury
would be justified in allowing exemplary damages. Exem-
plary damages are given as a punishment where torts are
committed with fraud, actual malice, or deliberate violence
or oppression, or where the defendant acts wilfully, or with
such gross negligence as to indicate a wanton disregard of the
rights of others. (1 Bouvier's Law Dic. page 561; Sedgwick
on Das. page 35—6th ed.; 5 Am & Eng. Enc. of Law, pages
21, 22; *City of Chicago* v. *Martin,* 49 Ill. 241). The amount
of "smart money," which the plaintiff is thus allowed to re-
cover in addition to his compensation for the injury suffered,
is left to the discretion of the jury, as the degree of punish-
ment to be inflicted in this way must depend upon the peculiar
circumstances of each case. (Sedgwick on Das.—6th ed.—
page 568, note; *Village of Sheridan* v. *Hibbard,* 19 Bradw.
421). The province of the jury in determining the allowance
of the punitive damages would be too much invaded if they
were instructed that it was their duty to allow such damages,
instead of being told that they might allow them, or were at
liberty to allow them. But where injury results from any act
or omission of another which is free from any taint of fraud,
malice or wilful wrong, that is to say, if a tort is committed
through mistake, ignorance or mere negligence, the plaintiff is
only entitled to recover compensation for the injury received,
which includes "loss of time during the cure, and expense in-

curred in respect of it; the pain and suffering undergone by the plaintiff, and any permanent injury, especially when it causes a disability for further exertion and consequent pecuniary loss." *(City of Chicago* v. *Martin, supra;* Sedgwick on Das.—6th ed.—pages 31, 32, etc.; 5 Am. & Eng. Enc. of Law, pages 40, 42, and notes). The foregoing instruction, so far as it goes, correctly states the elements of damage which the plaintiff here was entitled to recover under the law. Where the plaintiff has exercised ordinary care and the defendant has been guilty of such negligence as has caused the injury, the law says that the plaintiff is entitled to receive such damages as will compensate him for the loss actually sustained by him. In such a case, we cannot see that it is wrong to tell a jury, that it is their duty to award by their verdict what the law awards by its established principles. An instruction to that effect merely tells them to obey the law.

We do not think that the objection made to the plaintiff's second instruction, in view of the considerations thus presented, is of sufficient force to justify a reversal in this case.

The judgment of the Appellate Court is accordingly affirmed.

*Judgment affirmed.*