THE WHITNEY & STARRETTE COMPANY

*v.*

THOMAS O'ROURKE.

*Opinion filed April 21, 1898.*

1. MASTER AND SERVANT—*owner of building not liable for negligence of independent contractor.* One engaged in the construction of a building who employs and pays the laborers himself, without being under the control of the owner of the building, is an independent contractor, though he is to be paid a percentage on the cost of erection, and he, and not the owner, is liable for his own or his vice-principal's negligence.

2. SAME—*actual notice of defects not necessary to render master liable.* The master cannot screen himself from liability for injuries to servants from defective appliances on the ground that he had no notice of the defect, if such defect is one which he might have discovered by the exercise of ordinary care.

3. SAME—*servant does not assume risk of unknown dangers.* A servant does not, by virtue of his employment, assume the risk arising from defective appliances or unsafe surroundings, unless he has, or may be presumed to have, notice thereof; and he may assume that the place and appliances furnished by the master are safe and suitable for the business in which he is engaged.

4. SAME—*when instruction as to master's duty is not misleading.* An instruction holding that it is the duty of a contractor engaged in erecting a building to use reasonable care to keep boards used as a covering for the sills of the building "securely fastened," so as to prevent their falling on parties working below, does not require the contractor to make such covering "absolutely safe."

5. APPEALS AND ERRORS—*questions of fact settled by Appellate Court.* In an action by a servant against the master for injuries received from a defective appliance, the questions whether the injury resulted from the master's negligence and whether the master had notice of the defect are conclusively settled by the verdict of the jury and the judgment of the Appellate Court.

6. INSTRUCTIONS—*when refusal of instruction on question of fellow-servants is not error.* An instruction that if the jury "believe, from the evidence in this case, that the accident to the plaintiff was caused by the negligence of himself or of a fellow-servant in the same line of employment, then and in such case the plaintiff can not recover," etc., is properly refused, as not sufficiently apprising the jury of the meaning of the term "fellow-servant."

7. SAME—*instructions should be considered together as one charge.* The omission from one of the plaintiff's instructions of an element nec-

172  177
76a 398

172  177
80a 612

172  177
83a  69

172  177
182 542

172  177
90a [3]125

172  177
92a [3]314

172  177
93a [2]140

172  177
194  [7] 93

172  177
197 [8]617

172  177
200 [5]111

172  177
104a [3]197

172  177
206 [2]152

172  177
113a  46

172  177
115a [3]543
115a [7]565

essary to his right of recovery is not ground for reversal, where the omitted element is incorporated in his other instructions.

8. SAME—*not error to refuse instructions repeating substance of others given.* It is not error to refuse correct instructions the substance of which is embodied in others already given for the same party.

9. RELEASE—*when release of damages is not binding.* A receipt for wages due an employee up to the time of his injury, which contains the statement, "in full for services and damages," does not bar a subsequent suit for damages for the injury, where the employee was unable to read or write and signed the receipt by making his mark, not understanding it to be a release of damages.

*Whitney & Starrette Co.* v. *O'Rourke,* 68 Ill. App. 487, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JAMES GOGGIN, Judge, presiding.

This is an action in case, brought by the appellee against the appellant company to recover damages for a personal injury. The trial in the court below resulted in verdict and judgment for $5000.00 in favor of appellee. The case was taken by appeal to the Appellate Court, where an order was entered affirming the judgment of the trial court for the sum of $3000.00, the plaintiff having remitted all over that amount. The original defendants to the suit were the appellant company and Joseph Leiter. Subsequently and before verdict, the suit was dismissed as to Leiter. The present appeal is prosecuted from the judgment so entered by the Appellate Court.

The facts out of which the controversy arises are substantially as follows: In March, 1893, L. Z. Leiter was the owner of property on Van Buren street in Chicago, and the appellant was engaged in the erection of a building for him thereon. Plaintiff was employed as a laborer to assist in the construction of said building in the manner hereinafter stated. The building was about ten stories high, and the work upon it was pushed at night as well as in the daytime. About midnight on March 9, 1893, appellee and a fellow-laborer were standing on the ground

and engaged in hoisting lime in a barrel from the ground to the various floors of the building where it was needed. While he was so engaged, a board from the upper part of the building fell upon him, and inflicted the injuries complained of. The lime was hoisted in a barrel by means of a rope and pulley, running from the ground to the upper stories of the building. When the board, which struck the appellee, fell, the barrel was descending, and was empty, and had come down as far as the eighth story of the building, or thereabouts. The line of travel of the barrel was some five or six feet clear of the building, or away from the surface of the building. All the outside scaffolding had been removed, but at the second or third floor there was what is called a "coping" or course of boards projecting slightly from the wall of the building, which was put there for the purpose of covering the terra cotta sill, and preventing it from being struck by falling bricks or other *debris*. This covering was of boards laid lengthwise, two boards in width, and projecting a foot or more from the wall. The negligence charged in the declaration is, that, "through the carelessness and negligence of the said defendants and their agents, the said board or plank had been left without being fastened or otherwise secured;" and that "a large plank or board fell from above, through and on account of the fault, carelessness and negligence of the defendants and their agents."

WILLIAM B. KEEP, (CHESTER M. DAWES, of counsel,) for appellant.

EDWIN WHITE MOORE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed, as it is now quite common to claim in this class of cases, that the court below erred in refusing to instruct the jury to find the defendant not

guilty. The contention of the appellant upon this branch of the case is, that appellee's evidence shows no relation of master and servant between the appellant and himself, as charged in the declaration; that the appellant merely had a percentage contract for the construction of the building; that appellee was not in the employ of the appellant, but of the owner; that, therefore, the appellant did not owe appellee a master's duty to make the premises reasonably safe; that appellee's evidence did not show whence fell the board, which injured him, or that appellant had any notice of its loose condition before the accident; that appellee was guilty of negligence in lowering the barrel, so as to make it swing in and strike the board, thereby causing it to fall; and that, if appellee ever had a cause of action, he released and discharged it.

There is evidence tending to show, that appellee was employed by one William Frank; that Frank was a boss in the employ of the appellant company under one Pote, who was assistant foreman on the mason work for appellant; that Pote directed Frank to act as foreman of the night gang, which worked upon the building at the time of the accident, and that he did this under the direction and with the approval of one Grinnell, who was the head foreman for the appellant company, one Heaphy being the superintendent of the work for the appellant. The evidence also tends to show that the appellant was erecting the building for the owner under what is called a percentage contract, by the terms of which the appellant was to furnish material and labor, and to be paid its cost with a percentage added. Under this state of facts, it is clear that the relation of master and servant existed between the appellant and the appellee, who was put to work by one of appellant's foremen. Appellee was paid by the appellant during the time of his employment on the building. Where parties who are engaged in the construction of a building are to be paid a percentage upon

the cost of the labor, and where they employ and pay the laborers themselves, they are regarded as independent contractors, and are liable for injuries arising from the negligence of themselves, or their vice-principals. In such cases, the owner is not answerable for resulting injuries. It was so held in *Hale* v. *Johnson*, 80 Ill. 185, where it was said: "One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant."

There was evidence tending to show, that the board, which fell and injured the appellee, was one of the boards that had been laid across the terra cotta coping for the purpose of protecting it. It is true, that there was some evidence to the effect, that the descending barrel may have been permitted to swing too far inward, and thereby dislodged one of the boards protecting the covering. But whether such was the fact, or whether the dislodgment of the board was owing to the negligence of the appellant, was a matter to be determined by the jury, and which was submitted to them under proper instructions. The judgment of the Appellate Court, affirming the judgment of the trial court, is conclusive as to this question as far as we are concerned. Whether or not the defendant had notice of the loose condition of the boards, covering the terra cotta coping, was also a question of fact submitted to the jury, and is settled by the verdict and the judgments of the lower courts. The rule, in such cases as this, is not simply that the master is not liable unless he has notice or knowledge of the defective condition of the cause of the injury, but he is liable where the circumstances are such that he ought to have had notice. (*Goldie* v. *Werner*, 151 Ill. 551). The testimony of Heaphy, the superintendent, is that he supervised the fastening

of these planks upon the window sills, and was in the building every day, and went on every floor, and came in contact with the work constantly every day. He also says, that it was his business, if any of· these planks were loose, to see that they were made secure. As to the master's knowledge he cannot screen himself from liability upon the ground that he did not know of the defects in his appliances, if he might have known of them by the exercise of due care. The law will imply and infer notice of any defect, which by the use of ordinary care might have been known to the master. (*Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614). The master is liable when the servant is injured by temporary peril, to which he is exposed by the positively negligent act of the employer without any negligence on the part of the servant. (*Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 447). Here, there was evidence tending to show, that the perpendicular course of the rope and barrel was entirely free from the coping and its board covering, and that said rope and barrel were not in any way connected with the falling of the board. There was also evidence tending to show, that, before the accident, the boards upon the coping had become loose by bricks falling upon them. We are, therefore, unable to say that the jury were not warranted in finding that the appellant was guilty of negligence, and that the accident was not caused by contributory negligence on the part of the plaintiff.

As to the release referred to by the appellant, it.appears to have been intended rather as a receipt for wages due to appellee at the time it was signed, than as a release of damages suffered on account of the accident in question. It is a receipt for $22.00 as the amount of wages due to the appellee, giving the number of hours he had worked on certain days, and the rate at which he was paid per hour. It is true that, at the bottom of the receipt and before the signature, appear these words: "In full for services and damages." But the evidence shows

that the appellee was an ignorant man, and could not read or write, and signed the receipt by making his mark. There is evidence tending to show, that he did not understand the paper signed by him to be a release of damages. The question, whether or not the appellee understood the paper signed by him to be a release, or a mere receipt, was submitted to the jury by instructions given both for the appellant and the appellee. The jury have found that he did not understand it to be a release.

We are of the opinion, that the court below committed no error in refusing to instruct the jury to find for the defendant.

*Second*—It is assigned as error, that the court below erred in giving instructions for the appellee, and in refusing instructions asked by the appellant. The second instruction given for the appellee is criticised as failing to call the attention of the jury to the question, whether or not the appellant had notice that the board was loose at the time of the accident. It is said, that the instruction purports to present to the jury the facts of the case which would entitle the plaintiff to recovery, but omits from such facts the question of notice to the appellant. We have repeatedly held that all the instructions given must be regarded as one single charge. The third instruction given for the plaintiff, immediately following the one complained of, is as follows:

"The court instructs you that it was the duty of the defendant to use reasonable care and diligence to keep the boards upon the sill of the building securely fastened, and, if the board which injured the plaintiff fell from the sill of the building, on which said plaintiff was working, and was not securely fastened on said sill, and fell because of such insecure fastening; and the defendant knew, or by the exercise of reasonable care might have known, of such insecure fastening in time to have remedied the same, then the defendant was guilty of negligence, and is liable if the plaintiff was in the exercise of due care."

This instruction expressly requires the jury to find, that the defendant knew, or by the exercise of reasonable care might have known of the defect in question. If the second instruction was defective in the respect suggested, it was cured by the language of the third. The jury could not have been misled.

The third instruction, which is above quoted is criticised in several particulars. It is objected to, because the words "due care" are used instead of "ordinary care." Without stopping to consider any distinction that may exist between "due" care and "ordinary" care, it is sufficient to say that the court gave one instruction for the appellant, which told the jury that, before the appellee could recover, he "must show that, at the time of the accident complained of, he was exercising ordinary care and prudence for his own safety; and he must also show by a preponderance of evidence, that the accident and injury in question was occasioned by the negligence of the defendant or its servants." The court also gave another instruction for the appellant, which told the jury that, if they found from the evidence "that the appellee by the exercise of ordinary care and caution for his own safety at the time of his injury could have avoided the danger, then he cannot recover and your verdict should be not guilty." Thus, the requirement made of the plaintiff below was that he should have been in the exercise of ordinary care. Appellant's counsel further criticises this instruction upon the alleged ground that it misstates the duty of the defendant under the law. It is said, that it was not the defendant's duty to use reasonable care to keep the boards securely fastened. The words "securely fastened" are claimed to have the same meaning as "absolutely safe," and it is urged that the defendant was not obliged to make the boards, covering the coping, absolutely safe. We do not think that a secure fastening of the boards necessarily involves the idea of absolute safety. The master is required to use reasonable care

and prudence in providing the servant with safe and suitable appliances and instrumentalities to be used by him in the work, which he is employed to do.  He must also use all reasonable care to furnish to his employe a reasonably safe place in which to work, and use proper diligence to keep such place in a reasonably safe condition. (*Consolidated Coal Co.* v. *Haenni, supra; Libby, McNeill & Libby* v. *Scherman*, 146 Ill. 553; *Hess* v. *Rosenthal*, 160 id. 621; *Illinois Steel Co.* v. *Schymanowski, supra*).  The implied contract of an employer with his servant to furnish a suitable place, in which the servant, while exercising due care, may perform his duty without exposure to dangers not arising within the obvious scope of his employment, is not to be understood as implying an absolute liability for the safety of the workman's place. (*Northcoat* v. *Bachelder*, 111 Mass. 322).  It cannot be said, that the instruction required too much of the appellant in stating in substance, that it was its duty to make a reasonable effort to make the board secure.  The place where the appellee worked could not be reasonably safe, unless the boards were securely fastened.

It is urged as error, that the court refused to give the third instruction asked by the defendant which stated as matter of law "that the plaintiff below should be held to have assumed the risk of all ordinary hazards and dangers of his employment, whether the same were known to him or not."  The instruction does not state an accurate rule of law.  "In order to imply assent on the part of the servant to the hazards of the service, the hazards and risks must be patent, or such as the servant knows of, or ought to know of." (Wood on Master and Servant, sec. 353).  The servant assumes those risks only, incident to his employment of which he has express or implied notice.  A servant does not assume the risk of any danger arising from unsafe or defective methods, or surroundings, or instrumentalities, unless he has or may be presumed to have knowledge or notice thereof.  He has a

right to assume, that the place and the appliances furnished him by his master are safe and suitable for the business, in which he is engaged.    (14 Am. & Eng. Ency. of Law, pp. 843, 855).

It is further assigned as error, that the court refused instructions numbered 8, 10 and 11 asked by the appellant.    It is sufficient to say, that the substance of these instructions was embodied in other instructions which were given.    Instruction 11 was as follows:

"The jury are instructed as a matter of law that, if you believe from the evidence in this case, that the accident to the plaintiff was caused by the negligence of himself, or of a fellow-servant in the same line of employment, then and in such case the plaintiff cannot recover and you should find the defendant not guilty."

This instruction does not define the meaning of fellow-servant in such a way as to let the jury know to whom it applied.    The definition of a fellow-servant is a question of law.    When an instruction correctly defines the meaning of fellow-servant, then it is a question of fact for the jury to determine whether the person claimed to be a fellow-servant comes within the definition.    We have said, that servants of the same master, one of whom has caused an injury and the other of whom has received an injury, are fellow-servants, if at the time of the injury they are directly co-operating with each other in the particular business on hand, or if they are brought by their usual duties into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution. (*Wenona Coal Co.* v. *Holmquist*, 152 Ill. 581). The jury could not have told from this instruction, if it had been given, whether, under the name of "fellow-servant," it referred to the person who placed the boards on the coping, or whose duty it was to keep such boards fastened, or to the person who was aiding appellee in raising and lowering the barrel of lime.

After a careful examination of the whole record, we are unable to say that any error was committed by the trial court, either in the giving or refusal of instructions, or in the admission or exclusion of evidence.

Accordingly the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*