### Cleveland, C., C. & St. L. Ry. Co. and The Peoria & E. Ry. Co. v. Samuel T. Oliver, Adm'r.

1. ORDINARY CARE—*Use of, May Be Presumed.*—In actions to recover damages claimed to result from the death of a person in a railroad collision, a jury is authorized in finding that the deceased used ordinary care to avoid the collision, because of the presumption arising from the natural instinct of self-preservation.

**Action in Case.**—Death from negligence. Trial in the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the November term, 1898. Affirmed. Opinion filed June 3, 1899.

JOHN T. DYE and A. E. DEMANGE, attorneys for appellants.

FIFER & BARRY and AYERS, RINAKER & AYERS, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was an action on the case by the appellee against the appellants to recover damages for negligently killing Holmes W. Oliver on a public road crossing in the town of Danvers, in McLean county, Illinois. The case was tried by jury in the Circuit Court of that county, where the

appellee recovered a judgment for $1,000.   The appellants bring the case to this court by appeal and assign numerous errors on the record, but urge as the principal grounds of reversing the judgment that the verdict is contrary to the law and the evidence, and that the court gave improper and refused proper instructions.

The declaration averred that the Cleveland, Cincinnati, Chicago & St. Louis Railway Co. is operating a railroad from Danville, Ill., to Peoria, Ill., that is owned by the Peoria & Eastern Railway Co.; and which passes at grade over a public road in the township of Danvers, in McLean county, Illinois; that on August 17, 1897, the Cleveland, Cincinnati, Chicago & St. Louis Railway Co. ran a certain locomotive engine and train of passenger cars upon and along the said railroad up to and across said public road at a great rate of speed, to wit, sixty miles an hour, without ringing a bell or blowing a whistle continuously for the distance of eighty rods before crossing the public road, as required by statute; nor did the defendants, or either of them, place and maintain at said road crossing, a sign board with the words "Railroad Crossing," or "Look out for the Cars," thereon as required by law; and that on said day in August, 1897, when the plaintiff's intestate was then and there in a wagon drawn by a team of horses, in and upon said highway crossing, and while he was in the exercise of ordinary care for his safety, he was, through the carelessness and negligence of the servants of the defendants in charge of said locomotive, struck by the locomotive attached to the train of cars aforesaid and killed.   That he was eighteen years old when killed, and left a father, mother, sister and brother as his next of kin.

The defendants both interposed a plea of not guilty. The evidence shows that the defendants were the owner and operator respectively of the railroad at the time and place mentioned in the declaration; that the deceased was eighteen years old when killed; that he left the persons named in the declaration as his next of kin; that on August 17, 1897, the deceased was hauling wheat in a farm wagon

drawn by two horses, from a threshing machine on the south side of the said railroad in the township of Danvers, McLean county, Illinois, to the village of Danvers in that township; and that in passing from the threshing machine to the village, he had to cross the railroad at a grade crossing over a public road, running north and south, which crossed it at about right angles. At this place the railroad ran about east and west, and the public road north and south; and to the east of the public road, for some distance before reaching the same, the railroad was in a cut through a raise in the land; the dirt taken out of the cut having been thrown on each side thereof, formed a bank there, upon which there was growing, at the time in question, horse weeds of considerable height; and at this time to the east of the public road, and north of the railroad, there was a field of growing corn in which the stalks were six or eight feet high, so that a person riding in a wagon approaching the crossing, could with difficulty, if at all, see a train on the railroad coming from the east until he and it were nearly onto the crossing. On the day he was killed, the deceased had taken his first load of wheat from the threshing machine to the village of Danvers, and was returning in the wagon along the public road, heretofore described, to the thresher, when the locomotive drawing a passenger train of the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, coming from the east at forty or fifty miles an hour, struck him with a force sufficient to kill him and throw his body 131 feet. A short time before he was struck, he was seen by several persons sitting on the wagon, looking south and driving his team on the road toward the crossing in a slow trot.

The engineer in charge of the locomotive, seeing the wagon and team when they were about to cross the tracks, sounded the whistle sharply, but it was too late then to stop the train or for the deceased to get off the crossing in time to avoid being hit. The evidence shows that the deceased was industrious, sober and possessed of all his faculties. There were no sign boards at the road crossing whatever;

and there was a sharp conflict in the evidence as to whether or not the bell was kept ringing on the locomotive continuously for the distance of eighty rods before reaching the road crossing. The usual crossing whistle was sounded for the crossing in question and for two other crossings not far east of this one, but the whistle was not kept blowing for the distance of eighty rods before reaching the crossing where the deceased was killed.

The contention of the appellants' counsel is, first, that the declaration averred the deceased, when struck, was using due and ordinary care for his safety, which the plea denied; and he contends there was no proof that the deceased took any precautions to avoid the collision before going upon the crossing; hence the verdict is unsupported by any evidence on this material averment; second, the court by its third instruction, given at the instance of the plaintiff, told the jury "if they believed from the evidence the plaintiff's intestate, at the time in question, used such care for his own safety as a reasonably prudent person of like age, capacity and experience would have used under the same or like circumstances, then you are instructed, that if you further believe, from the evidence, that while he was in the exercise of such care, he was killed through the carelessness and negligence of the defendants, as charged in some count of the declaration, then your verdict should be for the plaintiff," which was erroneous, as there was no evidence in the record to the effect that the deceased was using ordinary care for his safety when killed, hence the instruction had no evidence to support it on that point; and, third, the court improperly refused to give the defendants' fourth instruction, which is as follows: "In an action like this, to recover damages claimed to result from the death of a person in a railroad collision, the question of whether the person who met his death exercised care for his own safety, such as an ordinary careful and prudent person would have used, familiar with the crossing and knowing its danger, if any, is a material question, and such care must be proved by the plaintiff by witnesses who saw

the deceased, or by other facts and circumstances given in evidence, otherwise the plaintiff can not recover," which was prejudicial error, as the points covered by it were not included in any other given instruction.

As to the first and second contention, above stated, we will say that there appears in this record no conflict in the evidence, but that the deceased was a youth of sober and industrious habits, of fair intelligence, and with all his senses unimpaired; that he approached the crossing in question from the north, sitting on the seat in the wagon, his face fronting in the direction his team was going; that he drove in a slow trot, and he was seen looking toward the crossing just before he went upon it. That for some considerable distance, before he reached the crossing, his view of the train, approaching it from the east, was almost, if not entirely, obscured by a field of growing corn, elevated ground, dirt embankment with horse weeds growing thereon, all laying between him and the train, until he was very close to the track; and the evidence fails to show that any eye witness who testified, saw all the precautions taken by the deceased to avoid being struck by the train; but the eye witnesses who did see him when he approached the crossing, and testified to what he did, do not pretend to say that they saw all that he did when approaching the crossing; so that in the absence of other countervailing evidence, the jury were authorized in finding that the deceased did use ordinary care to avoid the collision, because of the presumption arising from the natural instinct of self-preservation. See Dallemand v. Saalfeldt, 175 Ill. 310; Baltimore & Ohio S. W. R. R. Co. v. Then, Adm'r, 159 Ill. 535; and Illinois Central R. R. Co. v. Nowicki, 148 Ill. 29.

So there was evidence both direct and indirect, tending to show due and ordinary care on the part of the deceased, for his own safety and the court, for that reason, properly gave plaintiff's third given instruction.

As to the third contention above stated, that is completely answered against appellants by the record showing that

the court gave the defendants' seventh instruction, which is as follows:

"The burden is upon the plaintiff to prove by a preponderance of the evidence, that the deceased, H. W. Oliver, just before and at the time of the accident, was using such care and caution for his own safety as an ordinarily prudent and careful person with the knowledge of the place which you may believe the evidence shows he had, would use to keep himself out of danger, and if the plaintiff has failed to prove that the deceased was at that time using such care, plaintiff can not recover, and you should in that case find the defendant not guilty;" which covers all the salient points embraced in appellants' fourth refused instruction; so it was not error to refuse it for that reason. See Whitney & Starrette Co. v. O'Rourke, 172 Ill. 177, and Standard Brewery v. Nudelman, Ib. 337.

As to whether or not the statutory signals were given by the servants of the appellant in charge of the locomotive that killed appellee's intestate, the evidence was very conflicting on that question, and being one of fact, we ought not to invade the province of the jury and disturb their verdict on that question, as being against the weight of the evidence when there is enough evidence in favor of the verdict, which, if uncontroverted, would justify it, and especially since it comes to us sanctioned by the presiding judge, unless the record disclosed some evidence of prejudicial rulings of the trial judge on the evidence or the instructions which may have improperly influenced a verdict against the appellant, none of which appear in this record.    Hence we affirm the judgment appealed from.

Judgment affirmed.