## John Heinz, Appellee, v. Knisely Brothers, Appellant.
## Gen. No. 18,838.

1. MASTER AND SERVANT, § 125*—*duty as to safe appliances*. The master is bound to use reasonable and ordinary care and diligence in providing reasonably safe and sufficient means and appliances for the use of his servants.

2. MASTER AND SERVANT, § 161*—*duty of master to inspect*. The master's duty to use reasonable care in providing safe appliances for the servant's use is a continuing one, requiring him to use the same care to see that the appliances are kept in good condition while in use, and to that end to exercise reasonable care in supervision and inspection.

3. MASTER AND SERVANT, § 166*—*when master bound to know of defects in appliances*. The master cannot avoid responsibility by merely showing that he did not know of a defect in the appliances furnished, since it was his duty to know if it could be discovered by reasonable care and diligence.

4. MASTER AND SERVANT, § 211*—*when master liable for negligence of coemploye*. The master is liable for the negligence of a servant to whom he delegated the duty of furnishing or inspecting appliances and instrumentalities through which he carries on his business.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

5. MASTER AND SERVANT, § 211*—*what constitutes delegation to fellow-employe of duty to supervise.* Where in the performance of certain work on the outer wall of a high building defendant's employes were required to use a swinging seat or scaffold suspended by a rope from the roof, a coworker of plaintiff, who discovered a rope in the attic of the building, and in response to a question to defendant's "inside foreman" or superintendent, was told to use it if it was all right, was *held* to have been delegated with the duty of furnishing and supervising the safety of the rope.

6. MASTER AND SERVANT, § 447*—*when servant entitled to rely on care of master.* The servant may assume that the master has discharged his duty to exercise reasonable care to furnish him with reasonably safe appliances, and has no duty of inspection to discover latent defects and dangers in such appliances which render his employment more than ordinarily hazardous.

7. MASTER AND SERVANT, § 341*—*when servant does not assume risk of defective appliances.* The servant is charged with notice of such defects in appliances as the exercise of ordinary care would make manifest to him, but he does not assume the risk of defects of which he has no knowledge and which he cannot discover by the exercise of ordinary care, and of which the master has, or ought to have, knowledge—so *held* where an employe was injured by the breaking of a defective rope.

8. MASTER AND SERVANT, § 572*—*what inferences deducible from breaking of rope.* Where a servant working on the outer wall of a high building on a swinging seat or scaffold, suspended by rope from the roof, was injured by the breaking of the rope, it was *held* that the jury might infer that the rope was not strong enough to withstand the strain put upon it from the fact that it broke.

9. MASTER AND SERVANT, § 161*—*when inference that defect was discoverable by inspection justified.* Where an employe of defendant working on a swinging seat or scaffold suspended by a rope was injured by the breaking of the rope, it was *held* that the jury might infer that the weakness of the rope was manifested by its "fuzzy" condition, and that such condition might have been discovered by a proper inspection before the rope was used.

10. MASTER AND SERVANT, § 161*—*what facts constitute notice of necessity for inspection.* In an action by a servant to recover for injuries sustained on the breaking of a rope suspending a swinging seat or scaffold on which he was at work, it was *held* that the fact that the rope in question was found in an attic near a bottle of acid with a paper stopper was notice to defendant of the necessity for a careful inspection of the rope, especially since its rules provided that: "Acid must not be put in the same package with ropes in going to and from buildings and extreme care is urged to keep them from coming in contact."

11. MASTER AND SERVANT, § 826*—*findings implied from general verdict.* In an action by a servant for injuries sustained on the breaking of a rope suspending a scaffold on which he was employed, it was *held* that a verdict for plaintiff implied a finding that by such an inspection as defendant, in the exercise of reasonable care, should have made of the rope, under the circumstances disclosed by the evidence, it was probable that the defect in the rope would have been discovered; that the failure to make such inspection was negligence, and that such negligence was the proximate cause of plaintiff's injury; and such finding was *held* to have been sustained by the evidence.

12. DAMAGES, § 124*—*when verdict not excessive.* A verdict for $13,200 in favor of an employe was *held* not to be excessive for injuries, due to the breaking of a rope suspending the scaffold on which he was at work, precipitating him a distance of seventy-five or eighty feet to the ground below, resulting in a comminuted fracture of the right leg at the knee, a fracture of the right wrist, cuts on the head and face, injuries to his back and one ankle, requiring the performance of three operations, and preventing him from working more than two days in fifteen months enabling him to work only two days in fifteen months.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 9, 1914. Rehearing denied March 23, 1914. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** The defendant corporation was employed by Marshall, the owner of a building, to open a flue in the north wall of the building which had become obstructed. Defendant sent four men to do the work, two journeymen and two helpers, plaintiff, Heinz, and another. They spent two days attempting to locate the obstruction and concluded that it was between the first and second floors. They so reported to Marshall and he ordered them to cut into the wall from the outside. They found a seven-eighths inch rope, blocks and tackle in an attic on the ninth floor of the building and the janitor gave them permission to use them. Martin, one of the journeymen, who was in charge of the men, called up Hogan, the inside foreman of the defendant, told him that Marshall had ordered them to cut into the wall; that they had found a rope and tackle; that the rope looked

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

good to him and asked if he should use it. Hogan replied: "If it is all right use it." The men then took the rope and blocks to the roof, straightened out the rope, rove it through the blocks, hooked the upper block into strands of wire which passed around the chimney and let down the lower block and rope on the outside of the wall. A seat was attached to the block, on which a workman sat while cutting into the wall. All of the men worked in turns three days cutting into the wall, and then concluded that the obstruction was between the fifth and sixth floors and raised the seat to that place. The fourth day Martin and plaintiff worked part of the day cutting into the wall at the new place. Plaintiff resumed the work next day, found the obstruction and told Martin, who was on the roof of the building, and asked him to come down to the next building, that he had found the obstruction. Martin went onto the roof of the five story building adjoining the Marshall building on the north and saw that the rope "was all fuzzy" at a point about as high as plaintiff could reach while sitting on the seat. He called out to plaintiff that the rope was "all fuzzy there." Plaintiff put up his hand and then told Martin to throw him the slack end of the rope. Martin did so and plaintiff caught the rope, but as did so the rope parted and he fell to the ground, a distance of seventy-five or eighty feet, and received the injuries for which he sued. In an action on the case against the defendant corporation for negligence, plaintiff had judgment for $13,200, and the defendant appealed.

GEORGE W. MILLER, for appellant.

JAMES L. BYNUM, for appellee; BERNHARDT FRANK, of counsel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The master is bound to exercise reasonable and ordinary care and diligence in providing reasonably safe and sufficient means and appliances for the use of his servants. This is a continuing duty, requiring the master to use the same care to see that the appliances are kept in good condition while in use and to that end to exercise reasonable care in supervision and inspection. The master cannot avoid responsibility by merely showing that he did not know of a defect. It is the duty of the master to know, if it can be discovered by reasonable care and diligence. The master must answer for the negligence which may be committed by any servant to whom he delegates the duty of furnishing or inspecting the appliances and instrumentation through which the master carries on his business. If in this case the defendant could have known of the defect in the rope before it broke, by the exercise of ordinary care and prudence, it should be held to the same responsibility as though it actually did know of it. *Chicago & E. I. R. Co. v. Kneirim,* 152 Ill. 458; *Whitney & Starrette Co. v. O'Rourke,* 172 Ill. 177; *Consolidated Coal Co. of St. Louis v. Haenni,* 146 Ill. 614; *Missouri Iron Co. v. Dillon,* 206 Ill. 145.

We think that from the evidence the jury might properly find that the duty of furnishing and supervising the rope and tackle was delegated by the defendant to Martin. Hogan, the inside foreman of defendant, told Martin to use the rope in question if it was all right, and the defendant was not relieved from the duty to exercise reasonable care in providing and keeping in repair a rope furnished to suspend the seat on which plaintiff was compelled to sit to perform the work he was directed to perform for the defendant by the delegation of that duty to Martin. *Chicago & E. I. R. Co. v. Kneirim, supra.*

The servant has the right to assume that the master has discharged his duty to use reasonable care to furnish him with reasonably safe appliances, and has no duty of inspection to discover latent defects and

dangers in such appliances which render his employment more than ordinarily hazardous.

"He is charged with notice of such defects in appliances as the exercise of ordinary care would make manifest to him, but he does not assume the risk of defects of which he has no knowledge and which he cannot discover by the use of ordinary care, and of which the master has, or ought to have, knowledge." *Chicago & E. I. R. Co. v. Heerey,* 203 Ill. 492, 497, 498; *Missouri Iron Co. v. Dillon, supra.*

From the fact that the rope broke, the jury might properly find that it was not strong enough to withstand the strain put on it, and that the weakness of the rope manifested itself by the "fuzzy" condition that Martin testified he saw in the rope at a point about as high as plaintiff could reach, and that plaintiff testified he saw when Martin called to him that the rope was "fuzzy" above the pulley and, we think, might properly further find not only that the inherent weakness of the rope was manifested by its "fuzzy" condition, but such condition would have been discovered if a proper inspection had been made before using the rope. Martin testified that when they rove the rope through the pulleys he looked at it, but did not finger the rope as it passed through his hands for the purpose of seeing whether he could feel or detect anything the matter with the rope. Bennett testified that he and Ley were on the roof when the rope was straightened out; that the rope was already in the blocks and all they had to do was to straighten it out. Ley testified that he did not know who put the rope through the blocks. Martin testified that he examined the rope the next day after the accident and found that one foot of it at the place where it broke was rotten, and that he could tell from an examination of the rope that it was eaten up with acid; that he went to the attic where the rope was first found and there saw near the place where the rope was found a bottle of acid with a paper stopper in it. Miles, the janitor

of the Marshall building, testified that the rope and acid had been all in a pile together in the attic of the building for three or four months.   The rule of the defendant provides that: "Acid must not be put in the same package with ropes in going to and from buildings and extreme care is urged to keep them from coming in contact." The fact that the rope in question was found near a bottle of acid with a paper stopper was notice to defendant of the necessity of a careful inspection of the rope.

The finding of the jury, implied by their verdict, is that by such an inspection as the defendant in the exercise of reasonable care should have made of the rope, under the circumstances shown by the evidence, it is probable that the defect in the rope would have been discovered; that the failure to make such inspection was negligence and that such negligence was the proximate cause of plaintiff's injury. On the evidence in the record we do not think that such finding should be disturbed.

We find no reversible error in the rulings of the court on questions of evidence or instructions.

Plaintiff sustained a comminuted fracture of the right leg at the knee, a fracture of the right wrist, cuts on the head and face and injuries to his back and one ankle.   He was injured December, 1910, and the case was tried in February, 1912.   Operations were performed soon after the injury, and February 19 and November 11, and up to the time of the trial he had only worked two days.   In view of the very serious nature of plaintiff's injuries and the consequences up to the time of the trial and probable consequences in the future, we cannot say that the damages awarded him are excessive.

The judgment of the Circuit Court is affirmed.

*Affirmed.*