## North Chicago Street R. R. Co. v. Patrick Conway.

76   621
80   308
76   621
100  1396
76   621
105  1599

1. MASTER AND SERVANT—*Risks of the Service—When Assumed by the Servant.*—When a servant is temporarily engaged in more hazardous work than that for which he is employed, he takes upon himself all such risks incident to the work as are equally open to the observation of himself and the master.

2. ACCIDENTS—*In Personal Injury Cases.*—The mere fact that an accident occurs and a person is injured thereby does not of itself entitle him to recover in an action for personal injuries received, nor does it prove that the injury was caused by the negligence of the defendant in the action, nor does it relieve the person injured of the burden of making out his case.

3. ORDINARY CARE—*Defined—A Question of Fact.*—Ordinary care is defined as being that care which a reasonably prudent and cautious person would take to avoid injury under like circumstances, and whether the plaintiff was exercising such care is a question of fact.

**Trespass on the Case**, for personal injuries. Trial in the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in the Branch Appellate Court, First District, at the March term, 1898. Reversed and remanded. Opinion filed June 21, 1898.

### Statement.

This is an action for personal injuries. Appellee was injured while coupling a car known as a " trailer " to a motor car operated by electricity. The motor was standing still at the time, and the trailer was drawn to it by a single horse, with a view of coupling the cars together. When the two were a short distance apart the horse was detached and the trailer gradually approached the motor, its speed regulated by the conductor standing upon its platform with his hand upon the brake. Appellee seized the draw bars of each car, but says he was unable to raise that of the motor car because a hook had got into the opening above it in such a manner as to prevent. Consequently the cars came together and he was caught between the dash boards and injured. He recovered in the trial court and the company appeals.

Egbert Jamieson and John A. Rose, attorneys for appellant.

James C. McShane, attorney for appellee.

Mr. Justice Freeman, after making the foregoing state-. ment, delivered the opinion of the court.

It is claimed that appellee is entitled to recover, because it is said he was ordered to do work outside of his regular employment, without warning of its dangerous character; that the position of the hook was the immediate cause of the accident, and that it was placed in this position by one of appellant's servants, not a fellow-servant of appellee, and that the latter was in the exercise of ordinary care.

Whether the work of coupling was in fact outside of his regular employment is to be determined by the evidence. Appellee himself testifies upon that point, substantially, that he had been working for the company about a year and a half; that he worked as a laborer about three months, and at the expiration of that time was put on the monthly list as an oiler, and so continued for about a year and two

or three months, and until the time of the accident. On cross-examination he states that the first coupling he did was about two weeks before he got hurt. He says that when one of the couplers was absent one of the oilers took his place, but whether this was done without orders or not he does not know; that he has seen some of the oilers coupling; that when he was hurt he was coupling three days, and was hurt on the third day. He testifies that this was the third occasion when he had been taken from oiling and set to work coupling in the place of an absent coupler, and that the intervals between the arrival of cars to be coupled was from three to ten minutes throughout the day. A question put to him with reference to the custom was this: "Is it not true that whenever an employe was absent on any account, that one of the oilers took his place?" Appellee's answer was, "Yes, sir, but I don't know whether they got orders or not." And he further said, "There was some of them used to couple. I have seen some of them coupling," in answer to the question whether it was usual for the oilers to do so.

The testimony of other oilers employed by appellant was to the effect that it was the custom of the oilers to take the place of a coupler, whenever the latter was absent for any cause, and that no one else was assigned to that duty.

It is said by appellee that under this evidence it was still a question for the jury whether the work of coupling cars was outside of the regular employment of the appellee. An instruction was given at the request of appellee's counsel submitting this question to the jury, and appellant insists that there was no evidence upon which such an instruction could be based. There was no contradiction as to the facts in reference to this matter, and no question of fact for the jury to determine. Appellant's witnesses assert and appellee does not deny, but practically concedes that it was the custom for such of the oilers as might be assigned or directed to do so, to assume the duty of the couplers in the absence of the latter. He himself admits that he had done so on two previous occasions, and at the time he was hurt

he had been working as a coupler nearly three days. If this was the custom for the oilers, and it was known to the appellee to be such, then he undertook the coupler's work, when so ordered, as a part of his employment; and it was at least unnecessary to submit the question to the jury as if the facts were in dispute. Moreover, we can not assume that the jury intended by their verdict to find an undisputed fact contrary to all the evidence.

It is said that appellee had no warning of the danger of his employment as coupler. Here again there was no evidence tending to show any dangers, not as obvious to appellee as to the company. There was no complicated machinery and no defect in any of the appliances for coupling. It is not claimed that there was. Assuming that the hook was in fact caught in the opening above the draw bar, as appellee testifies, and disregarding entirely the preponderating testimony to the contrary, it is yet manifest that this was not owing to any defect in the appliances, and was not a concealed danger involving risk, of which appellee with ordinary care should not have known. The position of the hook and chain, if actually caught in the draw-bar, was obvious to a cursory examination, such as an ordinarily prudent man, handling the draw bar and about to raise it, can not be excused for not making.

"Where a servant is temporarily engaged in more hazardous work than that for which he is employed, he takes upon himself all such risks incident to the work as are equally open to the observation of himself and the master." Consolidated Coal Co. v. Haenni, 146 Ill. 614, 625.

Dangers which may be readily seen by common observation the servant assumes the risk of. Swift & Co. v. Fue, 66 Ill. App. 657.

It is claimed by appellee that the position of the hook was the cause of the accident, and that it was placed in an improper position above the draw-bar by one of the appellant's servants not a fellow-servant of appellee.

If appellee was not in fact engaged in work outside of his employment, then the employes with whom he was working were fellow-servants if they were directly co-oper-

ating with him in the particular work in which they were engaged. Rolling Mill v. Johnson, 114 Ill. 57–64.

But we can find no evidence in this record tending to show that any other employe, whether fellow-servant or otherwise, placed the hook over the draw-bar. It is said by appellee's counsel that the person who uncoupled the brake chains must have put it in this position; that it is evident that it did not get in this position by chance. But the testimony of appellee is: "I ran back to catch the car that was coming in from Center street, and in doing so the link —not the link, but the hook—doubled back in the pocket over the draw-bar, and as the incoming car was coming in, I reached and catched a draw-bar, and when I tried to lift the other one I could not; the link was right over the draw-bar in the pocket and I could not lift it." This is appellee's explanation as to when and how the hook got into the pocket; and so far as it explains the matter at all, it seems to indicate that he knew all about the position of the hook before it "doubled back into the pocket;" but the testimony is silent as to who put the hook in that position, if it was in fact there at all.

Testimony offered by appellant is to the effect that the hook was not on the top of the draw-bar, and was not the cause of the accident. We can not agree with appellee's counsel that if this testimony is correct, "then appellee's inability to make the coupling was due to other causes, which the evidence does not show he could have discovered, and which would entitle him to recover," there being no evidence whatever of such other causes. The mere fact that an accident occurred and that appellee was thereby injured, does not of itself entitle him to recover, nor does it prove that the injury was caused by the negligence of the company, and it does not relieve the plaintiff of the burden of making out his own case. I. C. R. R. Co. v. Cragin, 71 Ill. 177.

Appellant urges that appellee failed to prove himself in the exercise of ordinary care at the time of the accident, and that this was a material allegation requiring proof.

Whether appellee was exercising ordinary care is a question of fact. Ordinary care is defined as being that care which a reasonably prudent and cautious person would take to avoid injury under like circumstances. Chicago City Ry. Co. v. Dinsmore, 162 Ill. 658.

While the burden is on the plaintiff to show due care, yet if the facts and circumstances attending the injury show negligence in the defendant, and do not show any contributory negligence in the plaintiff, a *prima facie* case will be regarded as made out. Ill. C. R. R. Co. v. Nowicki, 146 Ill. 29.

We do not regard the facts and circumstances presented in this case as making out a case of negligence against the appellant.

The court was asked to instruct the jury to find the defendant not guilty, and refused. For the reasons indicated, we think the instruction should have been given.

The judgment of the trial court is reversed and the cause remanded.