# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY CO.

*v.*

FRANK T. KINNARE, Admr.

*Opinion filed April 18, 1901.*

1. NEGLIGENCE—*what does not constitute actionable negligence.* The mere fact that a railroad night watchman of mature years and of ordinary intelligence and experience is directed by his superior to go on extra duty, with other men, to arrest trespassers in the yards, does not, of itself, constitute actionable negligence.

2. SAME—*what evidence tends to establish negligence by a railroad company.* Evidence that gravel dumped between tracks in heaps, from one to two feet high, had been left unattended to by the company for several days at a point where employees were required to board moving trains, tends to establish negligence in that respect.

3. SAME—*when the danger from gravel piles cannot be said to be an assumed risk.* The danger from heaps of gravel beside a track can not be said, as a matter of law, to be so open and obvious as to be an ordinary risk assumed by a railroad watchman out on extra duty to arrest trespassers and directed by his superior to climb upon a moving train to arrest a man, where the attention of the watchman was fixed upon the man to prevent his escape, and where, being liable to be called in any direction without warning, he could not be expected to observe the condition of the tracks at all points.

*C., R. I. & P. Ry. Co.* v. *Kinnare*, 91 Ill. App. 508, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. Kavanagh, Judge, presiding.

W. W. Ross, and W. T. Rankin, (Robert Mather, of counsel,) for appellant.

James C. McShane, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

This suit was brought in the superior court of Cook county by the appellee, as administrator of the estate of Anthony Burns, deceased, to recover from the appellant damages for the death of his intestate. The declaration averred the employment by defendant of Anthony Burns as night watchman for its freight house at Taylor street, and alleged that defendant wrongfully, negligently and improperly ordered said Burns to go as a special police officer and arrest trespassers on appellant's trains, thereby requiring him to get on and off moving cars; that this was outside of his contract of employment and extraordinarily dangerous; that defendant permitted a pile of sand and gravel to remain alongside of one of its tracks near Fifty-seventh place; that defendant knew or should have known of the dangers this pile created for one attempting to board a moving train; that Burns did not know of the gravel, and by an order from a superior was obliged to get on a moving train, and that he ran along beside the train for the purpose of boarding it, when he stumbled against the gravel and fell, and was thrown under the cars and crushed so that he died shortly afterward. Defendant pleaded the general issue, and upon a trial there was a verdict for plaintiff, upon which judgment was entered. An appeal was taken to the Appellate Court for the First District, where the judgment was affirmed.

Upon the trial defendant asked the court to direct a verdict of not guilty, which the court refused to do, and it is argued that this refusal was erroneous. The facts which it is contended were not sufficient to justify the submission of the issue to the jury are as follows: Anthony Burns was employed by defendant as night watchman at its depot at Twelfth and Taylor streets for more than a year, watching the freight house and the cars in and around it. Many of the cars were laden with valuable freight, such as silver bullion, silks and teas, and he was required to ride upon and stay with these cars until delivered to connecting carriers. It was his duty to guard the company's property, see that car seals were intact, and to prevent suspicious characters from remaining in the yards or about the cars. Before this employment he worked in the daytime for defendant at Blue Island avenue. He wore a policeman's star and had a policeman's authority to arrest any one found trespassing on defendant's grounds or property. He worked as usual on the night of June 13, 1897, and arrived home at seven o'clock Monday morning, June 14. He did not take time to eat his breakfast but went right down town in response to an order to report at eight o'clock at the office of Mr. Hubbell, the superintendent. At that office he found several employees of defendant,—Ryan, Duffy, Shields, Shaw, Carr, Moweiser, Bowman, Hickey and Palmer. Shields was a special agent of defendant, and so was Carr. Palmer was clerk for the superintendent of terminals and had charge of watchmen and crossing flagmen. He took the men from VanBuren street by train to Fifty-first street to search for and arrest trespassers. The party divided there, Ryan, Shields, Carr and Burns going south together, walking along the railroad track to Fifty-seventh street. Burns arrested a man north of Fifty-seventh street. He chased him several blocks over to State street, and took him to Fifty-third street and put him in a car of which Palmer had

charge. Burns returned to Fifty-seventh street, and after another arrest by another man the four stood in the shade of a coal shed. There were a number of tracks at that place, and after some waiting a long freight train came from the north on track No. 5, with a man on top five or six car-lengths from the rear. Burns asked Shields, the special agent, if they should get him, and Shields said yes—to get him. The men started toward the train, spreading out so as to surround the man. . Burns ran alongside the train and was trying to get on when his foot struck a pile of sand and gravel, when he stumbled, broke his handhold and rolled and fell under the cars, where he was badly crushed and died shortly afterward. The tracks had been elevated the year before, and were then being leveled and brought up from sub-grade to true grade, evening and leveling them, filling in the low places, and perhaps raising them from one to six inches. A section gang of eight men were at work north of Fifty-seventh street, tamping cinders under the ties of track No. 5, on which this freight train was coming. The pile of gravel, which was a foot or a foot and a half high, was between this track and No. 4, and was to be used on No. 4. Gravel was brought in flat cars and dumped along the track on which it was to be used, and left for the section gang to round off so as not to interfere with the steps of coaches and way cars. This gravel had been dumped there four or five days before the accident. The gravel was in heaps, higher in some places than in others.

The declaration contained two charges of negligence: First, in directing Burns to go out with the other men and make arrests; and second, in leaving the pile of sand and gravel beside the track. There was no evidence tending to prove that the direction to Burns was wrongful or negligent. He was of mature years and at least ordinary intelligence and experience, and the work directed was proper and necessary in the prosecution of defendant's business. Where a servant, by reason of youth or

inexperience, is unable to intelligently understand or appreciate the dangers of the situation, the master may become liable by exposing him to them. But this case is not within that rule. The mere fact that Burns was directed on that occasion to work temporarily outside of his usual employment did not constitute actionable negligence, and the evidence showed no more than such a direction. The evidence, however, fairly tended to establish the second charge of negligence on the part of defendant in leaving the pile of gravel several days at a place where men were required to climb upon moving trains. This seems to have been a place where such service was required of employees of defendant, and the uneven pile of gravel rendered the service exceedingly hazardous. Plaintiff was bound to show the exercise of due care on the part of Burns, and the evidence tended to show such care. His action in attempting to board the slowly moving train in accordance with the order to make the arrest was natural, and such as any policeman or watchman would readily have undertaken in the effort to discharge his duty. We cannot say that a man of reasonable prudence similarly situated would not have done the same thing. The only reasonable deduction from the evidence is, that the attention of Burns was fixed upon the person on the car and his whole mind was intent upon securing him, and that he did not notice or voluntarily run upon the dangerous pile of gravel. His attention was necessarily withdrawn from his footsteps to prevent the escape of the person they were pursuing.

It is also argued that the danger from the pile of gravel was clearly one of the risks assumed by Burns. As to dangers which it requires no special intelligence or training to foresee, it is not material whether the servant is engaged in the performance of his regular work or not. He assumes the risk of any danger which is plain, open and apparent to his mind, although engaged in doing extra work or work outside of his usual em-

ployment. In *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614, it was said (p. 625): "Where a servant is temporarily engaged in more hazardous work than that for which he was employed, he takes upon himself all such risks incident to the work as are equally open to the observation of himself and the master." The evidence was that there were a considerable number of tracks at the place the accident occurred. Burns was taken to that locality with his associates for the purpose of arresting trespassers and wrongdoers, without any knowledge or information as to where such persons might be. He was liable to be called in any direction in the neighborhood and could not tell where or how he might perform the service. It happened that a trespasser was on the train coming on this track No. 5, along which there was a pile of gravel. The evidence for plaintiff was that the pile of gravel did not extend north from the place where he fell to the coal shed where he had been standing, but that he came to it in running along the train. It is doubtless true that if he had inspected the whole of defendant's premises southward to ascertain their condition he would have seen the pile of gravel, but under the circumstances the court could not say, as a matter of law, that the danger from the pile of gravel was an open and obvious one, and that therefore the risk was assumed. He did not know where or in what direction he might pursue a trespasser or where his work would be performed, and we cannot say that he was called upon to observe the condition of defendant's tracks at all places. The court was right in refusing the peremptory instruction.

The court modified instructions numbered 9 and 12 requested by the defendant, and gave them as modified. In the ninth, the rule of law that the risks from the pile of gravel would be assumed by Burns was based upon the hypothesis of fact that the risks and dangers thereof were open and plain to his sight. The court modified it so as to require the risks and dangers to be open and

plain to his sight and understanding. The twelfth also related to the assumption of risk upon the hypothesis that Burns was of full age and ordinary intelligence, and undertook the new duties required of him knowing their dangerous character. The court changed it to read, "knowing and understanding" their dangerous character. We do not see that the modifications changed the meaning of the instructions. That which is open and plain to the sight of a person capable of understanding is open to his understanding. The only avenue to the understanding of Burns of the pile of gravel before he fell on it was through his sight, and what understanding of the pile there could be beyond its being in plain sight we do not know. Certainly, knowing is equivalent to knowing and understanding. The sight of the pile of gravel would suggest the only danger there was, and no one would be heard to say that while the pile was open and plain to his sight he did not understand that it was there, or that the risk or danger thereof was open and plain to his sight but he did not understand that it was a danger. We think the instructions meant the same before the modification as after.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*