### Barrett Mfg. Company v. Joseph Marsh:

#### Gen. No. 13,378.

1. ASSUMED RISK—*application of doctrine of.* Where a servant is temporarily engaged in more hazardous work than that for which he was employed, he takes upon himself all such risks incident to the work as are equally open to the observation of himself and his master.

2. ASSUMED RISK—*what dangers are obvious.* Dangers which arise from revolving machinery are, in the main, open and obvious, and assumed by the servant working at such machinery.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed, with finding of facts. Opinion filed November 8, 1907.

Statement by the Court. This is a suit to recover for personal injuries suffered by appellee while in appellant's employ, for which judgment was rendered in his favor, from which this appeal is prosecuted.

The injury was caused by a machine used in the manufacture of tar roofing paper. This is composed of two

plies of paper with a coat of pitch between them and another coat on the upper sheet, upon which in the present instance was sprinkled a thin coat of pulverized granite. The machine in question is used after the sheets of paper have been saturated with tar, allowed to dry and wound into rolls. From these rolls the sheets pass between rollers and receive coats of hot pitch, one coat between the two sheets and a coat on the upper sheet. From these rollers the sheets pass under another roller, where the coating of pulverized granite is sprinkled on the upper sheet from a hopper above the roller. The paper then passes between two more rollers, the purpose of which is to press or "squeeze" the paper and grit into a firm sheet of completed roofing paper, needing only to be dried sufficiently to be wound into rolls in order to be ready for use. To give the paper an opportunity to dry on its way to the winder, it is first carried up as it comes from the "squeeze rollers," some fifteen or twenty feet, by an endless chain or carrier, to another set of rollers supported by four uprights having angle irons between them, which support the bearings upon which the rollers rest. This set of rollers, called "pulling rollers"—their purpose being only to pull the paper forward on its way toward the winder—caused the injury to appellee's hand, for which recovery is sought in this suit. The upper of the two rollers is constructed so that it can be raised and lowered by a small lever just above it. At the time of the accident the machine was new and was being set in operation the first time for regular work.

Appellee had been in the employ of appellant about three months at the time of the accident, working chiefly, it is said in his behalf, as a common laborer handling barrels, rolls of paper and loading or unloading cars and wagons. The morning of the accident he had been set to work attending to the box or hopper by which the grit was supplied to the surface of the paper, his duty being to supply the hopper with grit

and to regulate its flow. Soon after he was called by the foreman to help put the end of the paper coming from the "squeeze rollers" through the "pulling rollers," the machine having been started, and the end having gone through the preceding rollers. To reach the pulling rollers appellee went up a stairway to a platform about ten feet from the floor on the side of the uprights which support these pulling rollers, and took his place on the south side of the uprights, another man, whom he was to help, occupying the platform on the north side. The machine was not then in motion. A third man was standing ready to take hold of the paper when it should come through the pulling rollers. A fourth man was in charge of the lever by which the machine could be started or stopped.

There is conflict in the evidence as to subsequent occurrences. Appellee testifies that there being no standing place from which he could help to enter the paper between the pulling rollers, he rested his left foot between two angle-irons near the top and on the south side of the upright timbers, and that there being no place upon which to rest his right foot it was dangling in the air while he clung to the timbers with his right hand, taking hold of the paper with his left hand; that meantime the workman helping him was standing on the platform on the north side of the uprights handling that side of the sheet, that the paper was twice inserted between the rollers and then removed by order of the foreman because not put in quite straight, that by the time it was being entered the third time he had become "weak and trembly" because of the position he was in, and also that the paper had become "weak and crumbly." He states that when he and the helper on the other side attempted to enter the paper between the rollers the third time the corner of the paper which he held in his left hand suddenly gave way as he was pulling it up to the rollers and the side of his hand, which includes the little finger, was unavoidably thrust between the rollers, causing the injury for which recovery is sought.

On the other hand it is claimed in behalf of appellant that appellee was not clinging to the uprights on the south side as he says he was, but that he was back of the rollers, that is, west of and above them, his weight resting on a plank fastened to the timbers behind the rollers, his breast resting on the rod above them and his head and arms extending over their front; that in this position he had hold of the paper with both hands, his right hand on the south side of the sheet and his left hand on the north side; that there was a tear in the north edge of the sheet and that in attempting to guide or push this through the rollers with his left hand he allowed the hand to be caught so that it was partially drawn in and injured before the machinery could be stopped.

Appellant's claim is that when the paper was first inserted between the rollers the top roller was raised by the lever and the paper inserted, after which the top roller was let down; that the paper apparently not being satisfactorily adjusted, the top roller was again raised, the paper taken out and again inserted, after which the top roller was lowered again and the machine then started, the foreman first giving warning to the men that he was about to give the signal to start the machine, and that appellee was also told by the man who had been helping insert the end of the paper between the rollers to take his hand away.

After appellee's hand was caught the top roller was raised by the lever, but not high enough to release the hand, and four or five of the men took hold of the belt and reversed the rollers by main strength, thus releasing the injured hand.

F. J. CANTY and J. C. M. CLOW, for appellant.

KREMER & GREENFIELD, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged in behalf of appellant that it was not

guilty of causing or contributing to appellee's injury by any negligence whatever. It is not claimed that the machinery was in any respect defective or out of order. There is direct conflict in the evidence as to the position occupied by appellee when the accident occurred and as to the manner in which the paper was inserted within the rollers. We are compelled to the conclusion that the preponderance of the evidence is in favor of appellant upon the first of these questions of fact. The testimony of the superintendent and that of Carniato, the man who was on the platform north of the uprights supporting the rollers, contradicts appellee's statement that he was standing with one foot on an angle-iron and the other in the air, clinging to the structure with his right hand, while with his left he helped to adjust the sheet of paper between the rollers. It is probable from the evidence that his feet were not on the angle-irons behind or west of the rollers, as the superintendent thought they were, but appellee's version as to his position is not corroborated by anyone, so far as we can perceive. It is said that if standing in the position appellee claims to have been, his hand could not have been caught as he says it was. It is possible, perhaps, as his attorneys claim, that by giving an upward twist to the end of the paper his hand might have been in position to be caught as it was, and the nature of the injury therefore throws little light on the question of his position. If he was where he claims, it would seem from his own statement that he had put himself in a position where he ran considerable risk of injury from the sprocket wheel and chains operating the rollers. There is conflict also as to the manner in which the paper was entered between the rollers, whether by using the lever and raising the top roller or whether it was done after the machine had been put in motion and the rollers were revolving. Here also there is at least no preponderance of evidence in appellee's favor. Two witnesses testify that the sheet of paper was put through the pulling rollers before they were set in

motion, that this was done by lifting the upper roller with the lever and then putting the paper through, that it was done twice that way before the accident that morning, and that after the paper was so inserted the signal was given after warning everyone, and the machine was then set in motion. It had run, it is said by appellant's witnesses, one or two seconds, when appellee cried out and the machine was stopped. Appellee corroborated this by his own testimony on the direct examination, stating that when—the paper not having been put in quite straight—the superintendent called to them to pull the paper out, "We raised the rolls up and pulled the paper out." When asked who raised the rollers up, he answered, "The other man that was on the other side." While in his cross-examination appellee denied this, stating that the machine was run backwards to run the sheet out, it is impossible to give the weight to the denial to which, except for his previous statement, it might have been entitled. Appellee is partly corroborated by one witness who says he saw them back up the machine to take the paper out. This witness does not, however, so far as we discover, state that when he saw the end of the paper come through the rolls twice, the machine and rollers were in motion. The significance of this evidence would appear to be that if the paper was inserted between the rollers by raising up the upper roller, inserting the paper and then lowering the roller again, and the machine was not started until after this was done and the paper properly adjusted, then appellee's injury could scarcely have been caused, as he stated it was, by an effort on his part to insert the paper between the rollers while the machine was in motion, but in all probability must have occurred after the machine was in operation, and as the man closest to him says it did, because appellee was trying to push in after the machine started a part of the paper that was torn and "turned up." If it be true that the machine was not in operation when the sheet of paper was being in-

serted between the rollers and that after this was done appellee and others were warned that the machine was about to be started and that after being so warned appellee put his hand of his own volition in a position to be caught, the resulting injury cannot be justly ascribed to any negligence on the part of appellant.

It is contended in appellant's behalf that in any event appellee assumed the risk. It is undisputed that appellee had previously worked in roofing paper mills, both in Johnstown, Pennsylvania, and this city, where there were machines with rollers, the only material difference between them and the machine in question being that in those machines the rollers were near the floor and in the case at bar the rollers by which he was injured were elevated considerably above the floor. While the latter were not so accessible, according to the evidence, in other respects their operation was similar. It is said there is no evidence appellee had any knowledge that there was danger connected with them. But the danger and its character were open and obvious and "where a servant is temporarily engaged in a more hazardous work than that for which he was employed he takes upon himself all such risks incident to the work as are equally open to the observation of himself and the master." 2 Thompson on Negligence, p. 976, sec. 7. Consolidated Coal Co. v. Haenni, 146 Ill. 614; N. C. Ry. Co. v. Conway, 76 Ill. App. 621-624; I. C. Ry. Co. v. Brown, 107 Ill. App. 512-517; Republic Iron Co. v. Lee, 227 Ill. 246-259, and cases there cited. In the last mentioned case it is said that "even if the master fails in his duty to furnish the servant a place ordinarily safe in which to work and there are to the knowledge of the servant defects which render the place unsafe, the servant is held to have assumed the hazard, for he cannot go on with knowledge of the danger without complaint until he is injured and then hold the master liable." See, also, Doolittle v. Pfaff, 92 Ill. App. 301-307; Ward v. Daniels, 114 Ill. App. 374-376. There were no defects in the machine in the present

case and the danger of injury if a hand was caught between the rollers was not hidden, but patent to ordinary observation.

Appellee states that he was called by the superintendent to "come over here and help put this paper in the rollers," that he said he "didn't know nothing," meaning that he did not know whether he was wanted up there to put the paper through the rollers or to help to hold the paper up along the incline, and that he crossed over to the south side of the upright because ordered to do so by the superintendent. The mere fact that he "was directed on that occasion to work temporarily outside of his usual employment did not constitute actionable negligence and the evidence showed no more than such a direction. * * * As to dangers which it requires no special intelligence to foresee, it is not material whether the servant is engaged in the performance of his regular work or not. He assumes the risk of any danger which is plain, open and apparent to his mind, although engaged in doing extra work or work outside of his usual employment." C., R. I. & P. Ry. Co. v. Kinnare, 190 Ill. 9-13. Appellee was, however, injured by a danger which, as we have said, was open and obvious, the danger that if he allowed his hand to get between the rollers when they were in operation he would be so injured. That this was an open and obvious danger has been many times stated, in cases above referred to and others, where injuries have been caused in like manner by mangles and rollers of like character and purpose as those in question here. That a man of mature years, with appellee's experience in mills where similar rollers were in constant use, needed to be especially warned that if he allowed his hand to get between such rollers he would be injured, is a proposition scarcely requiring serious consideration. The fact that the paper was softened by the heat and tar was also as open to his observation as to the master's, and could not have been unfamiliar, in view of his very considerable experience in winding paper

so treated as it came from similar machines. Appellant's attorneys have cited a long list of cases where it has been held that a servant assumes the risks of dangers readily apparent to common observation, and where it has been held that dangers to be apprehended from revolving machinery are open and obvious. In Reed v. Stockmeyer, 74 Fed. Rep. 186-189, the court said: "If, however, the servant be of mature years and of ordinary intelligence and experience, he is presumed to know and comprehend obvious dangers. In such case the master is not liable for injury happening to the servant in the performance of dangerous work without the scope of his engagement for service, merely because he has been directed by the master to perform such work. If the servant is possessed of knowledge and experience sufficient to comprehend the danger and without objection undertakes the service, the master is not liable for injury received by the servant in such new and more dangerous employment (citing cases). The liability upon the master in cases of injury to the servant received in a dangerous employment outside of that for which he had engaged arises therefore not from the direction of the master to the servant to depart from the one service and to engage in the other and more dangerous work, but from failure to give proper warning of the attendant danger in cases where the danger is not obvious or where the servant is of immature years or unable to comprehend the danger." Some of the cases where the dangers from revolving machinery are held open and obvious as a matter of law are Johnson v. Devoe Snuff Co. (N. Jersey), 41 Atlantic Rep. 936-7; Greef v. Brown (Kansas), 51 Pacif. Rep. 926-7; Shine v. Gocheco Mfg. Co. (Mass.), 54 N. E. Rep. 245; McCarthy v. Mulgrew (Iowa), 77 N. W. Rep. 527-8; Hanson v. Hammell (Iowa), 77 N. W. Rep. 839-840; Blom v. Yellowstone Park Ass'n (Minn.), 90 N. W. Rep. 397-8.

Complaint is made of an instruction which told the told the jury "that the risk which the servant assumes

as a part of the contract of employment is confined to the particular work and class of work for which he is employed,'' and that if ordered to work temporarily where the work is of a different nature or character not within the scope of the employment he does not by obeying such order necessarily assume the risk. We deem the instruction misleading since under such conditions the servant does assume such risks as are open and obvious.

For reason indicated, the judgment must be reversed, with a finding of facts.

*Reversed.*