Steve Kuiwiski, Appellee, v. Bauer & Black, Appellant.

Gen. No. 15,062.

MASTER AND SERVANT—*when doctrine of assumed risk applies.* If the danger which caused the plaintiff's injury was obvious and in open and plain view, the servant is charged with knowledge thereof and he cannot recover.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of facts. Opinion filed June 28, 1910.

**Statement by the Court.** This appeal by the defendant Bauer & Black is from a judgment for $3,000 against it in favor of the plaintiff for personal injuries claimed to have been sustained while he was in the employ of the defendant.

The defendant is a corporation engaged in manufacturing various kinds of physicians' and druggists' supplies. Among these supplies is sterilized cotton, used for dressing cuts, wounds, etc. While the plaintiff was engaged in re-covering the top roller of a machine in which this cotton is washed, with rope, his right foot was caught between two rollers which are a part of this machine and the toes and front part of his foot were crushed.

The record shows that this machine was used to wash the cotton in an antiseptic solution and then squeeze the liquid out of the cotton by means of rollers. The machine is about twenty-five feet long and twenty-seven inches wide, and at the time of the injury it stood in a north and south direction the rollers being at the north end, and the cotton to be washed and squeezed entering the machine at the south end. It may be described in a general way as a long trough or vat, about three feet six inches high, into which the cotton was put at the south end; and by a series of rakes it was propelled in the vat by the same power which runs the machine itself, through the vat to the north end, where it passed out through

the rollers. Immediately in front of the rollers, that is, on the south side of them, was a brass plate, slightly convex, extending across the machine from side to side. On this plate the cotton was dropped by the rakes just before it passed through the rollers. These rollers are made of steel, are as long as the machine is wide, and are about twelve inches in diameter. The upper roller of the two is covered with rope and burlap, the rope being first wound tightly around the roller, and then the roller so wound was covered with burlap. This burlap has to be replaced from three to five times a day, while the rope has to be replaced once in four or five weeks. Still above these two rollers is a little roller which revolves faster than the others. It is called a "beater", and it performs the office of knocking off the cotton which sticks to the roller beneath it. The top of the lower roller is about on a level with the top of the machine, and the upper roller is entirely above the machine.

The machine is so constructed that the several parts may be operated independently of each other. At the time of the injury in question only the rollers were in motion and this was for the purpose of winding the rope upon the upper one of the two large rollers. The rake was not in motion and was back about 18 inches from the rollers. The movement of the rollers is controlled by a lever located on the west side of the machine at its north end. This lever operates a belt shifter, and moves the belt from the loose to the tight pulley.

At the time of his injury the plaintiff was about forty years old. He commenced working for the defendant in May, 1903, as a laborer, and was doing whatever work the foreman told him to do. This employment continued until his injury, October 13, 1904. After the first two months of work he was put to running a machine, and from this time on until his injury, he was always engaged in operating one or another of the machines in defendant's plant. He had operated the machine on which he was injured two or three months. He attended to the machine alone. While he was operating the machine he had seen others put on the rope and burlap, but claims that the occasion of his injury was

the first time he had assisted in putting them on the roller, and was the first time he was ever up on top of the machine. As to this claim there is a controversy in the evidence.

At the time of the injury the plaintiff and his brother-in-law, Guminski, were re-covering the roller with rope. Guminski was on the floor just north of the machine holding the rope as it wound around the roller, and pulling on it so that it would wind tightly around the roller. The plaintiff was on top of the machine, standing on the brass plate mentioned above, and with a hammer was pounding the coils of rope tightly against each other as they wound on the roller. They had put one layer of rope on the roller and had about half finished the second layer when the plaintiff got his foot between the rollers.

E. E. GRAY, F. J. CANTY and J. C. M. CLOW, for appellant.

OSSIAN CAMERON and A. S. LAKEY, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The declaration consists of four counts. The allegation of negligence in the first is, that the defendant directed, ordered and required the plaintiff to work in an unsafe and dangerous place. The negligence averred in the second count is that the defendant ordered the plaintiff to perform labor upon a certain washing machine, and negligently failed to provide reasonably safe appliances for the plaintiff with which to do the work. The negligence averred in the third count is, that the defendant ordered and directed the plaintiff to work upon and around a certain dangerous and defective machine. The fourth count alleges that the defendant negligently permitted the washing machine to be and remain in a defective condition and state of repair; that the machine was old, defective and dangerous in that a certain lever and bolts connected therewith and other appliances were defective, broken and in bad condition, and certain bolts were missing from the lever so that the same would

not work and control the machine, whereby the machine operated erratically, and this was unknown to the plaintiff but was known, or by due diligence would have been known, to the defendant.

From the detailed description of the machine given in the testimony of the plaintiff it appears that he had worked on the machine several months prior to his injury, having sole charge of the machine, and that he was familiar with its construction and its operation. He had observed the wrapping of the roller with rope and burlap at times when he was at work on the machine. The parts of the machine and particularly the rollers were in full view. He knew that if he got his foot between the rollers he would get hurt. On the day plaintiff was injured, and shortly before he was injured, the foreman went up on the machine and showed the plaintiff what he was to do and how to do it, by taking a hammer and pounding the coils of rope close together as the rope was coiled around the roller. The assistant foreman, Guminski, plaintiff's brother-in-law, stood before the rollers holding the rope, and keeping it tight as it wound around the roller. The plaintiff testified: "It was my right foot that went between the rollers. The rollers caught my foot and pulled it in. The roller touched my foot and pulled in my foot. The roller did not jump out of place at my foot. It stayed in the same place only and caught my foot and pulled it in. The reason the roller did not catch both feet was that the right foot was too near the roller and the roller caught the end of my shoe and pulled it in. The roller did not touch my left foot."

Guminski was called as a witness for the plaintiff and corroborated the plaintiff's testimony as to the material facts. This was all the evidence offered by the plaintiff.

The defendant produced five witnesses who worked in the same room with the plaintiff while he was engaged on the machine on which he was injured. These witnesses all testified seeing plaintiff up on top of this machine several times helping to cover the roller with burlap. While we cannot regard the fact, if it be the fact, that plaintiff was on

top of the machine many times engaged in the work of covering the roller, or whether this was the first time he ever was there engaged in that work, as in any way decisive of the question of liability, we think that, considering the admitted fact that it was necessary to renew the burlap covering three or more times every day while the machine was in use, and that the roller was covered with rope once in five or six weeks while the plaintiff operated the machine, the manner of doing the work must have been familiar to the plaintiff; and further, it is entirely probable, in our opinion, that he actually helped to re-cover the roller several times before he was injured, as testified to by the defendant's witnesses, four of whom were not in the employ of the defendant at the time of the trial; and that the preponderance of the evidence on this question is with the defendant.

On the question of liability, it clearly appears, we think, from the testimony of the plaintiff, that the cause of the injury which he received was not the negligence charged in the declaration or any count thereof. The defect in the machine claimed to exist does not appear to have had any causal connection with the injury or to have produced any action of the machine which caused the injury. The plaintiff says in his testimony quoted above, that there was no unusual action of the rollers; that the reason the rollers did not catch both feet was that his right foot was too near the roller, and the rollers caught the end of his shoe. The roller did not touch his left foot. No reason appears in his testimony for his foot being so near the rollers that it would be caught and drawn in between them, unless it was put there negligently by the plaintiff himself. He knew the place where he was standing, its shape and character and that the rollers on which he was working were in close proximity to the toes of his feet; and he admits that he knew that if the rollers caught his foot it would necessarily be injured. It is clear that the danger was obvious and the revolving rollers by which the danger was created were in open and plain view. Such dangers the law charges the plaintiff with knowledge of, and does not allow him to recover against

the defendant therefor. Galloway v. C., R. I. & P. Ry. Co., 234 Ill. 474; Steffen v. Illinois Steel Co., 140 Ill. App. 551; Kath v. East St. L. Sub. Ry. Co., 232 Ill. 126; I. C. R. R. Co. v. Fitzpatrick, 227 *id.* 478; Higgins Carpet Co. v. O'Keefe, 79 Fed. Rep. 900; Wilson v. Mass. Cotton, 47 N. E. Rep. (Mass.) 506; Collins v. Laconia Car Co., 38 Atlantic Rep. (N. H.) 1047; Graves v. Brewer, 38 N. Y. Sup. 566; Barrett Mfg. Co. v. Marsh, 137 Ill. App. 110.

By a clear preponderance of the evidence in the record it is shown that the defect in the machine in question, if it existed at the time of the injury, alleged in the declaration, did not have the slightest connection with the plaintiff's injury. Guminski testified that a certain box on the floor through which the shaft of the machine was running was loose and was riding up and down about four inches or more; that the box was loose because one of the bolts by which it was originally fastened was broken off, and the other bolt was bent; and that he told the foreman of its condition a week or more before the injury to plaintiff, and that the foreman promised to fix it. The only effect of this defect, according to the testimony, was that when too much cotton got in between the rollers the belt running the rollers would run off the tight pulley onto the loose pulley and the machine would stop. It was obvious that this did not and could not have any connection with the injury to plaintiff. No attempt is made in the evidence to show that this caused the injury, or that it could have any such effect. On the contrary, it affirmatively appears by the evidence on the part of the plaintiff that the machine was stopped, when plaintiff's foot got between the rollers, by throwing the belt off the tight pulley to the loose pulley by means of the lever provided for that purpose.

In regard to the claim made on behalf of the plaintiff that the defendant negligently took a man who was stationed at the lever to operate it when the plaintiff commenced to work at the roller away from that position and stationed a boy there, the evidence shows that there was a change made, but it does not appear that this had anything to do with the in-

jury. Moreover, the undisputed evidence is that Carpenter, who was at the lever when plaintiff was injured, was two years older than Fosberg, whom he had replaced.

In our opinion the evidence fails to show any actionable negligence of the defendant which caused the injury complained of, and the judgment must be reversed with a finding to that effect.

*Reversed with finding of facts.*