[No. 3913.]

## MORRIS ET AL. v. BOARD OF COUNTY COMMISSIONERS OF ADAMS COUNTY.

1. COUNTY COMMISSIONER'S BOND—*Liability—Statute Construed.* The statute (Rev. Stat., sec. 1251) providing that "any member of a board of commissioners who knowingly acquiesces in any misappropriation of the funds of a county, or in the allowance of bills which are not legally allowable," *held* that a mere mistake of judgment gives no action upon the bond, but that tortious or fraudulent conduct, with knowledge of the improper character of the charge allowed, must be shown.

*Held,* further, that the statute is not to be construed as a penal statute, and that, construing the statute as giving a penalty, the action being instituted more than one year after the offense was barred by Rev. Stat., sec. 4068.

2. COUNTY—*Liability for Attorney's Bill.* The bill of an attorney for services rendered in an election contest instituted to bring in question the election of a county commissioner is not a charge against the county.

In view of sec. 2099, Rev. Stat., an attorney should not be allowed for services rendered to county officials other than the board of county commissioners, unless such other officials are first authorized by the commissioners to employ or consult an attorney.

Under Rev. Stat., sec. 1241 and sec. 2096, the county commissioners are authorized to employ one or more attorneys on behalf of the county, and their action in the matter will not be reviewed by the courts unless it is made to appear that they acted unlawfully and corruptly.

3. —— *Commissioners—Action Without Meeting.* The services of an

attorney for the county being necessary, his employment by a majority of the board, without meeting, may be afterwards ratified at a meeting duly held.

*Error to Adams District Court.* HON. CHARLES MCCALL, Judge.

Mr. N. WALTER DIXON, Mr. GEORGE ALLAN SMITH, for plaintiffs in error.

Mr. OMAR F. GARWOOD, Mr. GEORGE A. GARARD, Mr. ERNEST R. PROEMMEL, for defendant in error.

CUNNINGHAM, Presiding Judge.

The facts necessary to an understanding of this case are substantially as follows: Plaintiff in error, Mark M. Morris (hereinafter, for convenience, referred to as defendant), was elected county commissioner of Adams County in the fall of 1908. At the same time, Henry Nordloh was elected a county commissioner. Immediately following the election, a contest proceeding was instituted against Nordloh, which was not determined until about May 12, 1909, when the supreme court handed down an opinion holding Nordloh's election to be regular. See *Nordloh v. Packard,* 45 Colo., 515. The board of county commissioners of Adams county consisted of three members. The hold-over commissioner, Andrew M. Patten, during the contest proceedings, declined to recognize Nordloh as commissioner, and, probably for that reason, no meeting of the board was held until after the opinion of the supreme court was handed down in May. From January 12, when Nordloh and Morris assumed office, until May 12, when the regularity of Nordloh's election was confirmed by the supreme court, George Allan Smith, an attorney-at-law, at the instance and request of Morris and Nordloh, acted as the county attorney for Adams County, that is to say, he advised the board, represented the county in certain suits pending in court, in which the

rights or interests of the county were involved, and advised various other county officials. In other words, he appears to have performed all the duties that a regularly appointed county attorney is accustomed to perform. There appears to have been considerable political turmoil in Adams County immediately preceding January 12, which continued until the regularity of Nordloh's election was finally determined, and Smith testified that he devoted practically all of his time, during that period, to his duties as county attorney, and there is no evidence in the record tending to contradict his statement in this respect. As soon as the supreme court had determined the contest proceedings in favor of Nordloh, the board met and organized, whereupon Smith presented to the commissioners his bill for $2,500 to cover services rendered by him during the period that he had been acting as county attorney, i. e., from January 12 to May 12, 1909. The bill was taken up, considered and allowed, Nordloh and Morris voting in favor of its allowance, while Patten did not vote for or against it. A warrant was issued, and the money drawn thereon by Smith. On June 17, 1910, more than thirteen months after this bill had been allowed by the county commissioners, the board of county commissioners of Adams County, on the relation of Thomas A. Miles, brought suit against the defendant and his bondsman, The Fidelity and Deposit Company of Maryland, to recover the amount of money which, by reason of the vote of Morris and Nordloh, had been paid to Smith. It was alleged in the complaint that this money was paid to Smith on account of services rendered by him to Nordloh in the election contest case, and it is further alleged that Smith had not performed any services for Adams County, and that he was therefore, not entitled to receive the $2,500, or any sum of money, from the county, "all of which was well known to the defendant, Mark M. Morris." The rights of the county to re-

cover were predicated upon sections 1248 to 1251, R. S., and especially upon section 1251, which reads as follows:

"In all suits upon official bonds of county commissioners, the recovery against one of the board shall not be limited to a proportionate amount of the damage proven, but the recovery on the bond of each shall be for the whole amount of damage proven; and any member of a board of commissioners who knowingly acquiesces in any misappropriation of the funds of a county, or in the allowance of bills which are not legally allowable, or in the payment thereof, and the sureties of such county commissioners shall be liable upon his bond for all damages, both proximate and remote, that such county shall sustain by reason thereof, to be recovered as above provided."

1. The trial judge ruled that under section 1251 it was not necessary to show that a county commissioner who votes to allow a bill that is irregular or improper does so wilfully or corruptly, or that he has any actual knowledge as to the infirmities inherent in the bill, but that under such circumstances, the commissioner must be conclusively presumed to know the law. In other words, the trial court gave no force or meaning whatever to the word "knowingly." On the contrary, by his interpretation of the aforesaid section, he read that word out of the section entirely. In this the trial court committed error prejudicial to the rights of the defendant. It will be observed that the word "knowingly" occurs in the same sentence with the word "legally." It is plain that the legislative intent was that a commissioner should only be held liable where he knowingly allowed, or acquiesced in the allowance of, a bill not legally allowable. The word, "misappropriation," as used in this act, we think, may fairly be said to contemplate something more than mere mistake of judgment in the allowance of a bill, or the paying out of money upon an honest mistake of judg-

ment. It implies tortious or fraudulent conduct on the part of the misappropriator. Our conclusion finds support in the following cases: *Price v. United States,* 165 U. S. 311, 41 L. Ed., 727, 17 Sup. Ct., 366; *Bryne v. State,* 12 Wis., 519; *Chicago R. Co. v. Kinnare,* 190 Ill., 9, 60 N. E., 57.

It is contended that our construction of the statute requiring the proof of actual knowledge makes it difficult for the county to recover. This may well be, but where the statute gives the county as many recoveries for a single loss or damage as it has commissioners, it can hardly complain that it takes this right along with the burden of strict proof. At any rate, we need not concern ourselves with the consequences of the statute, for it is not our duty to read out of it words of universal use and plain, every-day application. Moreover, if consequences are to be given consideration, the language of the supreme court of Mississippi is peculiarly pertinent to the subject now under consideration. In *Paxton v. Baum,* 59 Miss., 531, that court said:

"But we cannot ignore the fact that supervisors, in the discharge of many of their functions, are judicial officers, and especially so in adjudging upon the validity of claims against the county. A law which would make them personally liable for their erroneous judgment rendered, if constitutional, would certainly have the effect of preventing any solvent man from accepting office, or of becoming surety of those who did."

If it had been the purpose of the legislature to make every commissioner liable who voted for a bill "not legally allowable," without reference to his knowledge of the law or the facts, it would have omitted the word "knowingly." If the statute be given the construction which the trial court placed upon it, then it becomes highly penal in its character, and the plea of the one-year statute of limitations, section 4068, interposed by the defendant on the trial, ought to have been allowed, and thus the case

would have been summarily disposed of. We do not believe that the statute is penal, when properly construed. A statute like this should not be held to be penal unless, by its clear terms, it must be so construed. It does not appear, from the language of section 1251, that the legislature intended to impose any pecuniary liability by way of punishment, for the amount is limited to compensation or damages, which negatives the idea of punishment, as such, and it may well be doubted whether this section of the statute adds anything to the remedy which the county has under the common law, or which is given it by the very terms of the commissioners' official bonds. A very able and elaborate discussion of the subject of penal statutes will be found in *Nebraska National Bank v. Walsh,* 68 Ark., 433, 82 Am. St. Rep., 301, 59 S. W. 952. We do not mean to be understood, in citing this case, that we agree with all the views therein expressed, since the Arkansas court reached the conclusion, and expressly ruled, that a section in all respects similar to our section 911, R. S., was not penal. This reasoning is contrary to the repeated ruling of our supreme court, and of this court. But the case is, nevertheless, ably argued, and contains liberal citations of authorities on this interesting question.

The errors into which the trial court fell are chargeable almost wholly to the view which it took of section 1251. This is made clear by the fact that in the announcement of its opinion to the jury, in connection with the instruction to the jury to return a verdict against the defendant, the trial court used the following language:

"It is not my intention to accuse Mr. Morris with wilful corruption, but I do mean to state, in a most positive manner, that in the allowance and payment of the bill in question, he exceeded the limits and bounds of his lawful authority as a county commissioner."

And again, at the close of his remarks, which are preserved by bill of exceptions, the trial judge said:

"Every county official is presumed to know the law that is to govern his official conduct. He will not be heard to say that he does not know the law. Therefore, *by reason of the law*, Mr. Morris knew what he was doing. He knew the liability he was incurring in the allowance of the bill in question." (Italics ours.)

Therefore, on this reasoning, the court reached the conclusion, and so announced, that:

"The claim allowed Mr. Smith was not a legal charge against the county, and I must find that the defendant knowingly misappropriated the funds of the county, to the extent of $2,500, and the plaintiff is entitled to recover the same from the defendant and his bondsman, together with interest."

It is plain, from this language, that the trial judge predicated his action in instructing a verdict in favor of the plaintiff and against the defendant wholly upon his interpretation of the statute, and not upon any finding of moral wrong or actual knowledge of wrong on the part of the commissioner in voting for the allowance of Smith's bill. In this connection it should be said that there is no evidence whatever that any part of Smith's bill was for services which he rendered in the election contest case of *Nordloh v. Packard.* Clearly that would not be a charge against the county. On the trial, Smith testified explicitly that he had been paid for that service by popular subscription, and that no part of his bill included services rendered in the contest case. For the error that the trial court committed in the interpretation of the statute, its judgment must be reversed, and the case remanded for further proceedings. But in view of another trial, it is proper that we should allude to other contentions raised in the brief, which we shall proceed to do.

2. It is urged on behalf of the county that because

Nordloh and Morris procured the services of Smith before there was any regular meeting of the board, the board of county commissioners, after the election contest had been determined and the board had met and regularly organized, had no authority to ratify what Morris and Nordloh had done in the matter of Smith's employment, and hence, no matter what services Smith had rendered the county, he had no remedy. With this view we cannot concur.—*Clark v. Lyon County*, 8 Nev., 182; *Mitchell v. Commissioners*, 18 Kan., 190; *True v. Commissioners*, 83 Minn., 293, 86 N. W., 102; *LaSalle v. Hathaway*, 78 Ill. App., 75.

To so hold, might necessarily lead to the gravest results. Nordloh and Morris were the duly elected commissioners of Adams County; it is apparent that the county was in need of legal advice; the evidence tends to disclose that Smith rendered valuable services to the county. If this were true, the board, very properly, we think, recognized his claims, and should be commended, rather than censured and penalized, for paying to Smith what his services were actually worth to the county. We do not mean to be understood as expressing any opinion whatever concerning the value of Smith's services, or the amount which the board ought to have allowed him. These are matters peculiarly for a jury, under proper instructions from the court.

3. It appears that Smith rendered services to the various county officials, such as the treasurer and assessor, and that his bill included charges for services of this sort. Ordinarily, county officials, like the treasurer and assessor, have no authority to bind the county for attorney's fees. Section 2099, R. S., makes it the duty of the district attorney to render opinions to county officials whenever he is called upon by them for advice. It is our conclusion that before a county attorney ought to be allowed to recover for services rendered to county

officials, other than the board of county commissioners, he should show that the board of county commissioners had given authority or direction to such other officials to employ or consult an attorney. However, it does not follow from this, by any means, that Morris, the county commissioner, in voting for the allowance of Smith's bill, would *ipso facto,* become liable in damages to the county, for the county must go farther and show that the commissioner, in so voting to allow the bill, did so wrongfully and fraudulently, and with knowledge that the bill was unlawful.

4. It is vigorously contended on behalf of the relator, that because, under section 2096, R. S., the district attorney is obligated to represent the county in civil actions, and by section 2099, that official, upon the request of any county officer within his district, is required to give his opinion in writing upon all questions of law having reference to the duties of such official which may be submitted to him, the county was without authority to employ, or at least might not pay, a special attorney or a county attorney. This contention is without merit. By its terms, section 2096 authorizes the county commissioners of any county to employ one or more attorneys to appear and prosecute or defend in behalf of the people of the state of such county in any action or proceedings, and by section 1241, R. S., it is provided:

"The board of county commissioners of each county of the state may, when the interest of the county requires it, employ an attorney."

The county commissioners are the judges of when the interests of the county require the employment of an attorney, and until it is made to appear that their judgment in this respect has been exercised unlawfully and corruptly, it will not be interfered with by the courts.— *Roberts v. People,* 9 Colo., 358, 13 Pac., 630; *Hurd et al. v. Hamill et al.,* 10 Colo., 174, 14 Pac., 126.

States having similar statutes to our own have taken the same view of the authority of the board of county commissioners to employ special counsel as have our own courts. See *Tatlock v. Louisa Co.*, 46 Ia., 138; *Jordon v. Osceola Co.*, 59 Ia., 388, 13 N. W., 344; *Clark v. Lyon Co.*, 8 Nev., 182.

The judgment of the trial court is reversed, and the case remanded for further proceedings in conformity with the views herein expressed.

*Reverséd and Remanded.*